# S. D. Childs & Company, Appellee, v. City of Chicago, Appellant.

## Gen. No. 22,381.

1. EMINENT DOMAIN, § 42*—*when structure for use in connection with municipal bridge not additional servitude.* A power plant placed by a city in a pit in the street for the purpose of operating a bascule or "jack-knife" bridge over a navigable river is not an additional servitude, but essentially a part of the bridge.

2. EMINENT DOMAIN, § 51*—*when payment of compensation not condition precedent to exercise of power.* Even though it is admitted that a proposed structure and change of grade in a street in connection with the erection of a municipal bridge over a navigable river will damage adjoining property, the ascertainment and payment of such damages is not a condition precedent where no part of the property is taken, irrespective of the hardship which may be entailed thereby.

3. EMINENT DOMAIN, § 40*—*when remedy of owner of damaged property an action at law.* The remedy of one whose property suffers consequential damage by a public improvement in a street is by an action at law.

4. MUNICIPAL CORPORATIONS, § 874*—*when existence of street suf-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*ficiently shown.* On a bill to enjoin the erection of structures in a street in connection with a bridge over a navigable river, the existence of a public street *held* sufficiently shown.

5. MUNICIPAL CORPORATIONS, § 883*—*when erection of bridge connecting parts of street enjoined.* On a bill by a property owner to enjoin a municipality from erecting a bridge and approach over a navigable river and connecting parts of a street, which is to be built in part on complainant's property, defendant will be enjoined from erecting such structures until it has obtained the right to do so by condemnation or otherwise.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

MUNICIPAL CORPORATIONS, § 883*—*when access to property not destroyed by proposed improvement.* Evidence on bill to enjoin erection of bridge by city, examined and *held* to show that the proposed improvement would not cut off all access to or egress from complainant's property.

Interlocutory appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court. Reversed and remanded with directions. Opinion filed April 12, 1916. Rehearing denied and additional opinion filed May 17, 1916.

SAMUEL A. ETTELSON, for appellant; ANTON T. ZEMAN and CHESTER E. CLEVELAND, of counsel.

EDMUND S. CUMMINGS and LEE D. MATHIAS, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This is an appeal from an interlocutory order enjoining the defendant, City of Chicago, from proceeding with the construction of a bridge across the' Chicago River at Monroe street, until the damages have been ascertained and compensation paid. The parties will hereafter be designated complainant and defendant as in the court below.

The cause was heard upon the verified bill supported by affidavits and the verified answer supported by affidavits. Monroe street extends east and west in the

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

City of Chicago and exists by virtue of a common-law dedication. It was dedicated and laid out about seventy-five years ago and has continuously, since that time, been a public street. It is intersected by the Chicago River, which is a navigable stream. The defendant city has made plans and let the contract for building a bridge across the river on said street. The complainant is the owner of a leasehold estate, which expires April 30, 1919, in the property abutting on the north side of Monroe street and adjacent to the river. The property faces one hundred feet on Monroe street and ninety-nine feet on the river, and is improved by an eight-story mill constructed building, built of brick and stone. A dock eight feet in width extends along the river. As constructed, the building is adapted to the established grade of Monroe street. The only entrance to the building is from Monroe street at the southwest corner of the same. The elevators and stairways are likewise located in the southwest corner. The building is used by complainant and its subtenants for manufacturing purposes, and has been so used since it was built, May 1, 1904. The only means of ingress to and egress from the several floors of the building is by the elevators and stairways. In the construction of the bridge, the city is about to raise the grade of Monroe street abutting complainant's premises fourteen feet on the west and eleven feet on the east line of the same. The bridge to be constructed is of the jack-knife or bascule kind. For the purpose of operating and maintaining the bridge, the city is about to build in the street a concrete pit thirty-five feet in depth, abutting the west forty feet of complainant's premises, and extending practically the entire width of the street. The city intends to install and maintain in the pit motors, machinery and other devices to operate and control the bridge. The plans provide that when the bridge is complete, steel arms or girders will extend twelve feet above the surface of the

street at the curb, abutting the west forty feet of complainant's premises when the bridge is closed, and when it is opened, the arms or girders of the bridge move in the pit and extend upwards perpendicularly in front of complainant's property to a height of about eighty feet, and cut off all access to or egress from the west forty feet of the premises.

The complainant contends that the fee of the street being in the abutting property owners, the city has no right to put an additional burden upon the fee, without first obtaining the right to do so and paying compensation therefor; and that the city has not obtained such right. The argument is that the additional burden on the fee of the street is not by reason of the construction of the approach to the bridge, but by the construction of the pit in the street and the power plant in the pit; that the only right the city has in Monroe street is the easement to use the street for the purpose of travel along the street and of access to the adjoining property; that both the construction of the pit and the power plant "relate to the prevention of travel upon the street," and that, therefore, the pit and the power plant constitute an additional burden upon the fee. It is conceded that if the construction of the bridge as proposed constitutes an additional burden upon the fee in the street, and the city has not obtained the right to do so from the abutting property owners by condemnation or otherwise, it has no right to construct the bridge; but it is contended that the digging of the pit and the building of the power plant therein does not constitute such additional burden, but that they are essential parts of said bridge and that when completed the bridge will facilitate traffic in Monroe street, for which purpose the street was dedicated. After a careful consideration of all the facts as disclosed by the record, and in the light of all the authorities, we are clearly of the opinion that the power plant proposed to be constructed in the pit is as essentially

a part of the bridge as the plank to be laid in the floor of said bridge, and therefore it does not constitute an additional burden upon the fee in the street.

The complainant next contends that a court of equity will enjoin the damaging of property until compensation therefor is determined and paid, where it is admitted that the property will be damaged by the construction of the improvement, regardless of whether the same imposes an additional burden upon the fee in the street; that it clearly appears the complainant's property will be damaged by the change in grade and the construction of the steel girders; that the parties have been unable to agree as to the amount; that the city should therefore be compelled to proceed under the Eminent Domain Act to have the damages ascertained and that this is true where the fact that the property will be damaged is admitted, although no property will be physically taken. In support of this contention complainant cites the cases of *Meyer v. Village of Teutopolis,* 131 Ill. 552, and *McElroy v. Kansas City,* 21 Fed. 257.

In the *Meyer* case, *supra,* an ordinance was passed by the village officials vacating a certain portion of a street in the village in the manner prescribed by chapter 145, Rev. St. (J. & A. ¶¶ 11485, 11486). The village then filed its petition to have the damages to property, by reason of the vacation of said street, ascertained and assessed. It was contended on behalf of the property owners that the ordinance was void, as the street was vacated at the instance of and for the benefit of a private corporation. The contention was held untenable. In that case no question was raised as to the proper procedure, and furthermore the village officials were proceeding under the law as provided in chapter 145, Rev. St., which has to do with the vacation of streets.

In the *McElroy* case, *supra,* it was held, under a constitutional provision similar to ours, which provided

private property should not be taken or damaged for public use without just compensation, that where private property was damaged for public use compensation must first be ascertained and paid, and this, too, although no property was physically taken.

It would serve no useful purpose to discuss this or the other authorities cited by the complainant on this proposition, for the Supreme Court of this State has many times passed squarely upon the question now under consideration, adversely to complainant's contention. In *Parker v. Catholic Bishop of Chicago,* 146 Ill. 158, the court, in sustaining the dismissal of a bill for injunction, say (p. 165): "While private property cannot be taken by public authority for private use, it may be taken or damaged for a public use upon payment of just compensation to be ascertained by a jury in the mode prescribed by law. (Const., sec. 13, art 2.)  It seems to be well settled in this State, that where no part of the land or property of the complaining owner is physically taken for or in making the proposed public improvement, and the damages claimed to result are therefore consequential, only, this provision of the constitution does not require the ascertainment and payment of such damages as a condition precedent to the exercise of the right or power. *Stetson v. Chicago and Evanston Railroad Co.* 75 Ill. 76; *Patterson v. Chicago, Danville and Vincennes Railroad Co.* id. 588; *Scherts v. Peoria and Rock Island Railroad Co.* 84 id. 135; *Pennsylvania Mutual Life Ins. Co. et al. v. Heiss et al.,* 141 id. 35."

To the same effect is *County of Mercer v. Wolff,* 237 Ill. 74, where it is said (p. 76): "No part of the premises of the cross-petitioners was sought to be taken. No direct physical damage to their property was contemplated.  The damages to be sustained, if any, were entirely consequential.  For such actual damages, though consequential only, as may be sustained by an owner of abutting land through the taking of adjoin-

ing premises for a public use a remedy is given, and the owner may have his compensation ascertained by a jury, as required by the constitution in a common law action. But when no part of the land of an abutting owner is taken the constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain Act, but he is remitted to his action at law for his damages.''

Complainant's damages by reason of the change in the grade of the street and the construction of the pit and power plant therein being entirely consequential, it has its remedy in an action at law.

Complainant further contends that the court had jurisdiction to issue the injunction, in that the damages are irreparable and that there is no adequate remedy at law. It is conceded that it will cost the complainant at least $37,500 to open a new entrance to the building and rearrange the elevators and stairways, and that this must be done before the building can be of any use. The complainant further contends that it is financially unable to make such alterations; that it will be compelled to pay a rental of $13,000 per year; that tenants occupying the upper floors of the building, who sublease from the complainant, will move out; that the complainant will likewise be compelled to vacate the premises and move its machinery; that the construction of said improvement will interrupt its business, and that all these elements of damage complainant will be unable to recover, because it says they are *damnum absque injuria*. But the complainant argues that if such damages as are legally recoverable are first ascertained and paid it will not be compelled to suffer any of such losses because it will then be financially able to make all necessary alterations. The answer to this contention is that the court can im-

pose no condition on the city that the law does not authorize, and as we have already said, the law does not require that the city first pay complainant its damages before proceeding with the work.

A suggestion is made by the defendant that Monroe street does not exist between the west bank of the Chicago River and Canal street, which is a distance of several hundred feet. There is no allegation to this effect in complainant's bill. The contention is, however, set up in an affidavit in support of the bill. Complainant has made no point of this in its brief and has but incidentally referred to it in its preliminary statement of the case. The defendant's answer expressly avers that Monroe street is a continuous street from Michigan Boulevard on the east to South Central avenue on the west, a distance of about seven miles. Under the circumstances, we are of the opinion that there is a sufficient showing that Monroe street exists as a street throughout its entire length, including that portion between the river and Canal street.

Complainant further contends that it clearly appears from the record that the city intends to construct a bridge tender's house upon its dock; that the right to do so has not been given to the city and therefore the court properly entered the order for injunction. On the other hand, the city contends that it has no intention of constructing the bridge tender's house until it has acquired the right to do so by contract or condemnation.

The city admits that in connection with the bridge, if it can procure the right to do so by negotiations or condemnation proceedings, it desires and intends ultimately to construct at or near the southerly end of said dock a concrete and steel structure, about twenty feet in height and eight feet in width, to be used as a bridge house, in connection with the operation of said bridge when completed; that the complainant has not consented to the erection of such structure, and the city

has not acquired such right by condemnation or otherwise; that the city has no right to use the dock and has no intention of so doing, unless and until it acquires such right. From the foregoing, it clearly appears that the city intends to construct upon the complainant's dock a bridge tender's house; that it has not acquired the right to do so; that such house will be used in connection with the operation of such bridge; that the bridge cannot be operated without it, and that it is an indispensable part of the bridge. The city is authorized to change the grade in Monroe street in front of complainant's premises and to construct the bridge, for the sole reason that the bridge when constructed will be a part of Monroe street, so that traffic may pass freely over the same, as contemplated when the street was dedicated, and unless the bridge can be operated it will be of no use or benefit to the public. Before the city should be permitted to construct the bridge in the manner proposed, it should first clearly appear that it has authority to make a complete bridge, either through the right to use complainant's dock or other means by which the bridge may be operated, and as the record shows that it has no such authority, it should be enjoined until such authority is shown.

The injunction order entered in this case, however, is too broad. The order will, therefore, be reversed and the cause remanded with directions to enter an order enjoining the defendant from proceeding with the construction of the bridge or the approach thereto in front of complainant's property until the city has obtained the right to construct a bridge which will subserve the purpose for which Monroe street was dedicated. Each party will be required to pay its own costs in this court.

*Reversed and remanded with directions.*

Additional Opinion by Mr. Justice O'Connor on Petition for Rehearing.

A petition for rehearing has been filed in this case. Before preparing the opinion we made a careful examination of the entire record. Since the filing of the petition we have again carefully examined the record, and are clearly of the opinion that the conclusion originally reached was correct, and that a rehearing should be denied. However, counsel for complainant strenuously insist that we have overlooked several important and controlling principles in the case. We think, therefore, that we should say something further in reply thereto.

In the petition counsel state that the "opinion *concedes* that the proposed improvement cuts off All Access to and egress from the west forty (40) feet of the complainant's property and that the steel girders or arms of the bridge will extend twelve (12) feet above the surface of the curb when the bridge is closed. The court, however, has failed to give due consideration to the fact that the complainant as an abutting property owner has an Indefeasible Right of access to and egress from its property which, while it may be temporarily interfered with, cannot be permanently destroyed. The court has also entirely overlooked the fact that the highway is dedicated As Much for Means of Access to and from the Abutting Property as to public travel along the same and that the taking away of this right from the abutting property owner is as much a *taking* of his property right as is the closing up of the street itself."

The contention of counsel as above quoted is based on a misapprehension. All access to and egress from the west forty feet of the property is not cut off by the proposed improvement. The property is located on the north side of Monroe street, adjacent to the river, and extends one hundred feet on Monroe street and ninety-nine feet on the river, and is improved by an

eight story building. The only entrance to the building is from Monroe street at the southwest corner, and within said forty feet. Likewise the elevators and stairways are located in this corner of the building. These stairways and elevators furnish the only means of access to the several floors of the building, and complainant contends that it will cost about $50,000 to open a new entrance to the building and rearrange the elevators and stairways, said entrance and stairways to be located in the southeast corner of the building; that if this were done complainant would not lose its tenants and could make use of the entire building. From this it clearly appears that all access to and egress from the west forty feet of the property will not be cut off by the proposed improvement.

Counsel also say that "a municipality has no right to so obstruct its streets as to deprive property owners of free access to and from their lots adjoining." In support of this contention, complainant cites, among other cases, *Stack v. City of East St. Louis,* 85 Ill. 377. That was an action on the case for damages to real estate occasioned by the city's authorizing and permitting a bridge company to build an approach to a bridge in front of Stack's property, which rendered the street permanently useless and obstructed Stack's ingress to and egress from his property and caused water to flow and drain upon the land, so that the cellars upon the property were filed with surface water, etc. A demurrer was sustained to a declaration setting up these facts. The Supreme Court reversed the case, holding that the plaintiff was entitled to recover his damages. This is precisely the position we take. Complainant has an adequate remedy at law to recover any legal damages it may sustain. Whether the city proceeds under the Eminent Domain Act or the complainant brings its action on the case, the damages will be precisely the same, the only difference being that in the former the damages must first be ascertained and paid,

while in the latter the damages will be assessed after the bridge is constructed. The wisdom or unwisdom of this method for compensating property owners whose property is damaged for public use is not a question for the courts.

Complainant has raised other points in its petition for a rehearing, which we have carefully considered, but deem it unnecessary to refer to them here, as the same are fully covered in the original opinion. A rehearing will be denied.

*Rehearing denied.*