## S. D. Childs & Company, Appellant, v. City of Chicago and William R. Moorhouse, Commissioner of Public Works, Appellees.

### Gen. No. 22,991.

1. EMINENT DOMAIN, § 42*—*when watchman's house for use with municipal bridge is not an additional burden upon fee of street.* A watchman's house which is constructed on a street in order that the watchman may, upon the operation of a municipal "jack-knife" bridge over a navigable river, lower the gates across the roadway and warn the public is not an additional burden upon the fee of the street, but is an essential part of the bridge.

2. EMINENT DOMAIN—*what does not constitute taking of street for navigation and for private purposes without compensation.* There is no taking of a street for the purpose of navigation and for private purposes without compensation, where, in order that the premises on one side of a navigable river may be used for railroad purposes and that the river may be open for the necessary width for the purpose of navigation, it is necessary that the abutments on the side used by railroads be constructed in the river and that the bridge be moved a certain distance in the other direction so that not only the river but a certain portion of the street on the side of the river opposite the railroad premises be bridged.

3. EMINENT DOMAIN, § 40*—*when remedy of owner of damaged property is at law.* The remedy of one whose property is damaged by the method of construction of a lawful public improvement is at law.

4. DEDICATION, § 5*—*how question of intention to make is determined.* The question of intention to dedicate a street across a navigable river is the controlling element and must be gathered from the plat and all the attendant circumstances.

5. DEDICATION, § 5*—*when evidence sufficient to show dedication of street across navigable river.* Evidence, including an examined plat, *held* to show the intention of the dedication of a street to connect both portions of the street by extending it across a navigable river.

6. RAILROADS—*when lessee may authorize construction of viaduct.* The lessee, under a 999-year lease of property for railway purposes, *held* to have the right to authorize the construction of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a viaduct from a navigable river over the railroad property to connect a municipal bridge with a city street.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Affirmed. Opinion filed January 17, 1917.

EDMUND S. CUMMINGS and LEE D. MATHIAS, for appellant.

SAMUEL A. ETTELSON, C. E. CLEVELAND and M. S. CRESSY, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

S. D. Childs & Company, a corporation, filed a bill in equity against the City of Chicago and certain of its officials to restrain the defendants from constructing a bridge in Monroe street across the Chicago River, until damages occasioned to complainant's property by reason of the construction of the bridge should be first ascertained and paid. A temporary writ of injunction was ordered, from which the defendants prosecuted an appeal to this court, where the order of the trial court was modified and the cause reversed and remanded. The city, to conform with the opinion of this court, changed its plans so that the entire bridge would be constructed within Monroe street. The facts are stated in the former opinion of this court (198 Ill. App. 590) and need not be repeated. After the decision on the former appeal, complainant filed an amended and supplemental bill, and, after issue joined, the cause was tried upon the merits, and a decree entered dismissing the amended and supplemental bill for want of equity.

The appeal was taken directly to the Supreme Court, but on motion of the defendants it was transferred here by that court. On that account a number

of points are argued in the briefs that it will be un-necessary for us to pass upon. The only contentions of complainant not covered in our former opinion are: (1) that the proposed construction of the watchman's house in the street is an additional burden upon the fee of the street, and that the city has not acquired the right to construct the same by condemnation, contract or otherwise; (2) that the construction of the bridge as proposed is designed for the purpose of aiding navi-gation, and not to facilitate travel on the street; (3) that the city has not the right to construct the bridge across the river, for the reason that Monroe street when dedicated stopped at the banks of the river and did not extend across it; (4) that the city has not ac-quired the right to construct that portion of the bridge or viaduct between the west bank of the river and Canal street, and particularly the twenty-seven and one-half feet immediately west of the river.

*First.* The plans and specifications of the bridge provide for the construction of the watchman's house at the east end of the pit. The house when completed will extend over the street from curb to curb and rest on two pillars, the floor being sixteen feet above the roadway. There are fourteen feet of sidewalk space between the curb and the lot line on each side. When the bridge is being operated, the watchman lowers the gates across the roadway and warns the public. We are clearly of the opinion that this house is an essen-tial part of the bridge and therefore not an additional burden upon the fee of the street.

*Second.* The abutments on the west side of the river are to be built in the river, in order not to obstruct any part of the premises on the west side of the river for railroad purposes, and to provide a channel of one hundred and sixty-five feet in width for purposes of navigation. To accomplish these purposes it was nec-essary that the bridge be moved to the east so that not

only the river, but approximately fifty feet of the street is to be bridged. Complainant contends that this constitutes the taking of the street for the purpose of navigation and for private purposes without compensation, and is therefore unlawful. The Chicago River is a navigable stream, under the control of the Federal Government, and the bridge must be constructed under the supervision and approval of Federal authority. The chief engineer of the city, under whose supervision the plans were prepared, testified that the bridge could be constructed in no other feasible manner. We are therefore of the opinion that the contention of the complainant is untenable. Of course if complainant is damaged by reason of the method of construction adopted, such damages may be recovered in an action at law. *Rigney v. City of Chicago,* 102 Ill. 64.

*Third.* Complainant contends that the title to the bed of the Chicago River is in the riparian owners to the thread of the stream, subject to the rights of the public for the purposes of navigation; that Monroe street was not dedicated across the river, but stopped at the river's banks and that the city has not acquired the right by condemnation or otherwise to construct the bridge over the river. In support of this contention, it is argued that the plat of school section 16 addition to Chicago, "indicates the Chicago river by two boundary lines and Monroe street coming up to the banks of the river on each side thereof. There is no mark on the plat indicating or denoting that it was the intention of the dedicator that Monroe street should be dedicated across the Chicago River." The question of intention is the controlling element and must be gathered from the plat and all the attendant circumstances in evidence. In passing on a similar question, Mr. Justice Scholfield, in delivering the opinion of the court in *Piper v. Connelly,* 108 Ill. 646, said

(p. 651): "The question of intention must be settled by the language of the deed and all the attendant circumstances in evidence, and not merely by the letter in the descriptive part of the deed." The plat of section 16 in the record shows Monroe street extends from east to west across the entire section; that the Chicago River divided the section about the middle in a northerly and southerly direction. The river is indicated by two lines representing the easterly and westerly banks. The boundary lines of Monroe street stop at the lines indicating the banks of the river. The plat also shows at least seven other streets extending from east to west across the section, indicated in the same manner as Monroe street. There are also at least four streets east and the same number west of the river extending across the section from north to south and indicated in a like manner, so that the entire section is divided into blocks, and on each side of Monroe street the blocks are divided into lots. From an examination of the entire plat we are clearly of the opinion that it was the intention of the dedicator that Monroe street should extend across the river.

*Fourth.* The complainant contends that the city has not the right to construct the viaduct from the west bank of the river to Canal street, and that unless such viaduct is constructed the bridge cannot be used. Of course the law will not permit the city to construct a bridge which cannot be utilized. It is conceded that the bridge cannot be used without the viaduct. The question therefore is whether the city has the right to construct the viaduct. Monroe street between the river and Canal street was vacated in 1861, and conveyed to the Chicago, Pittsburgh and Ft. Wayne Railway Company for railway purposes. The railway company and its successors have continued to and are now occupying the property for such purposes. The evidence tends to show that the railway company, its

lessees and successors, have conveyed to the Union Station Company the westerly one hundred and thirty-two feet of that portion of Monroe street, but have not conveyed the twenty-seven and one-half feet immediately west of the river; that the Pittsburgh, Ft. Wayne and Chicago Railway Company, the owner of the premises, executed a lease for a period of 999 years to the premises, which lease is now the property of the Pennsylvania Company. The Union Station Company is a corporation organized for the purpose of constructing a union station in Chicago. It was authorized to make use of certain streets by the city council, and, as a consideration for such rights, it agreed to construct a bridge across the river at Monroe street, connect it with Canal street by means of a viaduct, and procure a grant to the city of the right to extend Monroe street upon the viaduct from the bridge to Canal street. The Union Station Company has changed its name to Chicago Union Station Company, and in accordance with the provisions of the ordinance agreed to build the viaduct, and has given bond to secure the performance of its agreement in this regard. The ordinance further provides that if the viaduct is not constructed by the station company, the city may do so, and the Pennsylvania Company, the lessee under the 999-year lease, is required to accept the provisions of this ordinance, which it has done. July 11, 1916, the Chicago Union Station Company granted to the city, in accordance with the ordinance, a perpetual easement to construct and use a viaduct from the bridge to Canal street, and under the provisions of the ordinance it has also agreed to secure a similar grant from the owner of the fee and the lessees of the twenty-seven and one-half foot strip. The evidence also shows that complainant's leasehold interest in the premises which it occupies will expire April 30, 1919. The Pennsylvania Company, under its lease, which has

about 950 years yet to run, must use this property in the same manner and for the same purposes as the Pittsburgh, Ft. Wayne and Chicago Railway Company are required to use it, namely, for railway purposes. Building a union station is certainly using the premises for railway purposes. One of the conditions under which this station must be constructed is that a viaduct be built connecting the bridge with Canal street as provided by the city ordinance, which provisions have been accepted by the lessee Pennsylvania Company. From the foregoing it appears that the objection urged by complainant is that the city has not obtained the right to construct and maintain the viaduct from the owner of the fee of the twenty-seven and one-half feet immediately west of the river. We are, however, of the opinion that the Pennsylvania Company, under the provisions of its lease, has the right to authorize the construction of the viaduct. *Chicago West Division Ry. Co. v. Metropolitan West Side El. R. Co.,* 152 Ill. 519.

Finding no reversible error in the record, the decree of the Superior Court of Cook county is affirmed.

*Affirmed.*