197 Iowa 162
31 LRA 185   The Chicago West Division Railway Co. *et al.*   |152  519|
|161  254|
|152     519
|193   ²223

v.

Metropolitan West Side Elevated Railroad Co.

*Filed at Ottawa October 29, 1894.*

1. Condemnation—*how far one railway company may condemn property of another.* For the purposes of right of way, one railway company may condemn the property of another such company not already devoted to the same use.

2. But the rule is otherwise where the taking would result merely in a change of ownership, without affecting the *use* of the property.

3. Same—*remote reversionary interest may be ignored.* Even nominal damages need not be awarded for a reversionary interest so remote that its value is merely nominal and speculative, and not a *market value.*

Writ of Error to the Circuit Court of Cook county ; the Hon. Francis Adams, Judge, presiding.

Mr. Thomas A. Moran, Mr. Egbert Jamieson, Mr. J. B. Mann, and Messrs. Moran, Kraus & Mayer, for the plaintiffs in error :

A competing railway company cannot acquire, by the exercise of the right of eminent domain, the exclusive use of a material part of the property of another like corporation, which property is in actual use by and necessary to the uses of such corporation, without express authority from the legislature, or authority granted by necessary implication. *Railroad Co.* v. *Joliet,* 79 Ill. 25; *Central Railway Co.* v. *Railway Co.* 81 id. 526; *Illinois Central Railroad Co.* v. *Railroad Co.* 122 id. 473; *Railroad Co.* v. *Institute,* 43 id. 303; 2 Wood on Railroads, 853 ; *Matter of Buffalo,* 68 N. Y. 177; *Pennsylvania Co.'s Appeal,* 3 Am. & Eng. Ry. Cas. 507 ; *Railroad Co.* v. *Long Branch Com.* 39 N. J. 34; *Gerrard Railroad Co.* v. *Railroad Co.* 87 Ala. 501; *Appeal of Railroad Co.* 122 Pa. St. 529 ; *Fidelity, etc. Co.* v. *Railway Co.* 53 Fed. Rep. 687; *Matter of Boston Railway Co.* 79 N. Y. 64 ; *Prospect Park* v. *Williamson,* 91 id. 552 ; *Matter of Mayor of New York,* 135 id. 253 ; *Twelfth Street Market Co.* v. *Railroad Co.* 142 Pa. St. 585 ; *Railroad*

*Co.* v. *Railroad Co.* 8 Fed. Rep. 858; *Railroad Co.* v. *Board of Comrs.* 57 Fed. Rep. 945; *Inhabitants* v. *Railroad Co.* 4 Cush. 63.

The interest of the Chicago West Division Railway Company in the premises in question is owner in fee simple, subject to a lease to the other plaintiff in error. This reversionary interest, by the verdict and judgment in this case, is taken, without any compensation being paid therefor, which is manifestly unconstitutional.   *Carpenter* v. *Jennings,* 77 Ill. 250; *People* v. *McRoberts,* 52 id. 38; *Comr. of Highways* v. *Durham,* 43 id. 86; *Rigney* v. *Chicago,* 102 id. 77; *Railroad Co.* v. *Plymouth Co.* 14 Gray, 161; 2 Wood on Railroads, sec. 557, p. 1028; *Pumpelly* v. *Green,* 13 Wall. 177.

Mr. R. S. THOMPSON, Mr. JOHN P. WILSON, and Mr. E. J. HARKNESS, for the defendant in error:

As to the right of petitioner to condemn the property in question, attention is called to the case of *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589; see, also, *Lake Shore, etc. Railway Co.* v. *Railway Co.* 97 id. 506; *East St. Louis Con. Railway Co.* v. *Railroad Co.* 108 id. 265; *Railway Co.* v. *Town of Lake,* 71 id. 333.

The objection that no compensation was awarded to the lessor is not well taken. A corporation whose corporate existence is limited to a period of years, may, nevertheless, take title in fee, and may convey in fee.   *Nichols* v. *Railroad Co.* 12 Barb. 460; *Asheville Div.* v. *Aston,* 92 N. C. 476; *People* v. *O'Brien,* 111 N. Y. 1; 1 Waterman on Corp. 633; Angell & Ames on Corp. (11th ed.) secs. 172, 195, 778*a*.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first insisted by plaintiffs in error that the premises in question are not subject to condemnation by the defendant in error.   The property was acquired by the Chicago West Division Railway Company in 1867, and when the petition was filed it was occupied by the West

Chicago Street Railroad Company, in part as a barn for stabling horses and as a change barn, and a portion was used for the storage of salt, such salt being used on the tracks, and the property was used further for a black-smith shop for the repair of cars and shoeing of horses of the company, and it was alleged that taking the property for the purpose of the petitioner in this case would absolutely destroy the use of it for the purposes to which it is now devoted, or was devoted by the West Chicago Street Railroad Company at the time of the filing of the petition. There are no railroad tracks on any portion of the property, nor was the property, or any part of it, used as a right of way by the plaintiffs.

If the West Chicago Street Railroad Company had constructed its tracks on the property in question, and was using it for a right of way in the transaction of its business, we would not hesitate to hold that defendant in error could not condemn the property and appropriate it to the same use. But that was not the case. The street railroad company had never used the property as a right of way or for the purpose of running cars over it, nor, so far as appears, was it necessary for the company to use it for that purpose. Indeed, during the past three years it had been used but little as a horse barn. The question presented resolves itself into this : whether one railway company can acquire property, and hold it, not as a right of way, but for some other purpose, and thus prevent another railway company from condemning it for a different use.

The same question arose in *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589, and it was so fully discussed in that case we will content ourselves with a brief quotation from the opinion of the court then delivered : "If the doctrine contended for exists to the extent claimed, no property belonging to a railroad company, under an ordinary charter, could be taken by another at all,—a position that no one would

contend for as an abstract proposition. The rule of construction above adverted to is applicable only where the taking would result simply in a change of ownership, without affecting the use of the property sought to be taken. It is hardly necessary to observe that it does not follow because the two uses are both public, that they are, therefore, within the meaning of the rule, necessarily the same. The land sought to be taken in the present case, at the time of filing the petition had no building or structure of any kind upon it, though it was used by the appellant for the purpose of receiving and discharging freights in conducting its business by rail and river. It is true that prior to that time the appellant had contracted with various parties for the building of a brick freight house on the premises, and the same has subsequently been built ; but for the purposes of the question in hand that is unimportant, for the use to which the property was applied before the building of the freight house was just as much a public one as it was afterwards. The question here is, does appellee seek to take and appropriate the property to the same use to which it was applied by appellant at the time of filing the petition? We think not. As already seen, it was then used as a kind of wharf or dock, for the purpose of receiving and discharging freights ; but appellee now seeks to condemn it as a part of its right of way through the city, and as the line of its proposed road leads across the Chicago river at that point, it will, of necessity, require the building of a bridge, which must be supported by an abutment on the west side of the river, built upon the lot in question. * * * Surely the condemnation of this piece of ground for a right of way, and the construction of an abutment thereon for a bridge, which is essential to its use as a right of way, cannot, with any degree of propriety, be called taking it for the same use it had previously been applied to. The difference in the two uses in this case is certainly greater than where one company takes

a part of another's tracks for a crossing, and the right to do this is not at all questioned by any one.   *   *   *   To say that this extensive block of ground in the heart of a great commercial city like Chicago, where there is a constantly growing demand for additional railroad facilities, can not be crossed at all by any other railroad entering the city,   *   *   *   is a proposition to which we cannot give our assent." See, also, *East St. Louis Connecting Railway Co.* v. *East St. Louis Union Railway Co.* 108 Ill. 265; *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 id. 333; *Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 97 id. 506.

On the 20th day of October, 1887, the West Division Railway Company leased to the West Chicago Street Railroad Company all of its railway lines, with the appurtenances, rights of way, privileges, lands, tenements, stables, shops and other structures, including horses and live stock, harness and other personal property owned or used in the operation of the lessor's then road, to have and to hold the same from the 20th day of October, 1887, for the full, unexpired term of the corporate existence of the lessor, and for the full term of 999 years.   The jury. empaneled to assess the damages returned the following verdict:

"And we do find and report that the just compensation to be paid by said petitioner to the lessor, the Chicago West Division Railway Company, for its interest in the said property described in the petition filed herein, for the taking and appropriating of the said property for the uses and purposes set forth in said petition, together with the just compensation to be paid by said petitioner to the said Chicago West Division Railway Company for damages (to property not taken), which said property is set forth and described in the cross-petition filed in said cause for the Chicago West Division Railway Company, to be the sum of........dollars.   And we do find and report that we have ascertained. and determined the just com-

pensation to be paid by said petitioner to the lessee, the West Chicago Street Railroad Company, for its interest in said property described in the petition filed herein, for the taking and appropriating of said property for the uses and purposes set forth in said petition, together with the just compensation to be paid by said petitioner to the West Chicago Street Railroad Company for damages to the property not taken, (which said property is set forth and described in the cross-petition filed in said cause by the West Chicago Street Railroad Company,) and for the cost of removal, to be the sum of $32,860. And we, the jury, find that the payments of the amounts above stated to the parties, as above set forth, will fully compensate said parties, respectively, for the taking by said petitioner of the said lots and parcels of land described in the petition filed herein, together with the improvements thereon, for the uses and purposes stated and set forth in the said petition filed in said cause, and for all damages to property set forth in the several cross-petitions filed, as aforesaid, in said cause, caused by the taking of the property proposed to be taken by petitioner for the uses and purposes in said petition stated and set forth."

The jury in this case did not disregard the law, but, as has been seen, by the verdict compensation was allowed for the premises taken. But it is said the West Division Railway Company owned the reversionary interest in the property taken, and, as such owner, it was entitled to compensation. While the amount of compensation which should be paid for property taken may, as a general rule, be determined without much difficulty, yet where there is a conflict in the title, and the title is claimed by different persons, or where there may be different estates held by different persons in the property, it may be, and often is, a subject attended with difficulty to determine to whom the compensation should be awarded. If an error has been committed here, the error was not a failure to award compensation for the property taken, as that was done,

but the error was, if an error at all, in failing to award the compensation to the proper party.

As has been seen, all the right, title and interest owned by the Chicago West Division Railway Company had been transferred and conveyed to the West Chicago Street Railroad Company for the term of 999 years. The lease under which the property was transferred is broad and far-reaching in its terms. It is binding on its successors and assigns, and runs to the lessee, its successors and assigns. The lessor covenants to maintain and keep up, during the term, its corporate existence, so long as permitted by law, and "shall not and will not commit or omit, or suffer to be committed or omitted, any act whereby its corporate existence may be annulled, abridged or affected," and the act under which the lessor is organized provides for the renewal of its charter for an unlimited term. The lease not only transferred all the tangible property of the lessor, but its franchises. After giving a list of the property transferred, the lease contains the following : "And, generally, all the real, personal and mixed property belonging to the party of the first part (lessor), and all rights, privileges and franchises connected with or related to the said demised railways, or any part thereof, or to the construction, maintenance, use, location, re-location or operation of the same, as fully and entirely as the same are now or may be hereafter vested in the said lessor, or its successors or assigns, saving and reserving, however, the franchise of being a corporation, and any other right or privilege which is or may be necessary to preserve the corporate existence or organization of the said party of the first part." Under the terms of the lease, all property and all rights and franchises are absolutely transferred to the lessee for a period of 999 years. Nothing whatever is left in the lessor but the right to exist as a corporate body, for the purpose of receiving the rents provided for in the lease.

Under the facts as they existed, was the lessor corporation such an owner as entitled it to compensation? In other words, was the title so held to the property of any value whatever? After the execution of the lease it is difficult to see what title or estate remained in the lessor which was of such a value as to form a basis for awarding compensation. But if the question was one of doubt, in the absence of evidence bearing directly on the question, that doubt was removed by the evidence introduced on the trial before the jury. One witness, and but one, was called to testify as to the value of the estate of the lessor in the premises,—Edgar M. Snow,—and he testified that the lessor's reversionary interest in the premises was merely nominal and speculative, and on cross-examination he further testified that the interest was not worth anything and had no market value. No other witness was called to testify as to the value of the lessor's reversionary interest in the premises, and under the evidence as it was presented to the jury on this question, there was nothing before the jury upon which they could, without disregarding their oaths, award compensation to the lessor.

There is another consideration which has some bearing on the question. Section 13 of article 2 of the constitution of 1870 provides that "the fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken." Here, the fee vesting in the lessor is not disturbed by this condemnation proceeding. The possession and use of the property alone are affected by this proceeding, and that does not deprive the lessor of the right to recover of the lessee the rent provided for by the terms of the lease, as held in *Stubbings* v. *Village of Evanston*, 136 Ill. 37. As a general rule, where a party to the proceeding has an interest in the premises, but is really entitled to no compensation, the practice has been to award nominal damages. But we do not think that is required. The

only object in awarding nominal damages, in any case, is for the purpose of carrying costs; but in cases of this character the petitioner always pays the costs, hence no necessity exists for allowing nominal damages.

It is also claimed that the evidence fails to show that petitioner was, unable to agree with respondents as to the compensation to be paid. It appears from the evidence contained in the record that negotiations commenced between petitioner and respondents about the first of June, 1893, and continued until about the eighth day of the following September. Various interviews took place between the parties and numerous letters were written on both sides, but no agreement was reached, and without going over what occurred between the parties at their meetings, and the contents of the letters, we think there is ample evidence in the record from which the jury might properly conclude that the parties were unable to agree in regard to the compensation to be paid.

The court, on its own motion, gave to the jury the following instruction :

"It will be your duty to find by your verdict the amount of compensation to be paid to the West Division Railway Company, the owner of the reversion, and also the amount to be paid to the West Chicago Street Railroad Company, the owner of the leasehold interest ; but the total compensation to be awarded to the respondents, the Chicago West Division Railway Company and the West Chicago Street Railroad Company, should not exceed in amount (as heretofore stated) the full, fair, cash market value of the premises proposed to be taken, and the damage, if any, to property not proposed to be taken."

It is claimed in the argument the instruction took from the jury all consideration concerning the cost of the removal of the personal property, and all consideration of the evidence concerning the necessary increased cost of operating the railroad of plaintiffs in error, occasioned by being deprived of the barns and property in question.

We do not concur in that view. In regard to these matters the jury had been fully and clearly instructed on behalf of the respondents, and this instruction had no reference whatever to these matters, but its purpose doubtless was to cover another and a different subject. We see nothing in this instruction in conflict with others given, or calculated to mislead the jury.

It is also claimed that the same objection exists in regard to the first and fifth instructions given on behalf of petitioner. As to the first, it, in substance, informs the jury that the compensation to be paid to the owners for lands taken is the fair cash market value of such land, while the fifth, in substance, declares that the total compensation awarded for the lessee's estate and the owner's estate should be equal to, but should not exceed, the fair cash market value of the property taken and damages to the property not taken. We see nothing in either of the instructions, when properly considered, calculated to mislead the jury.

The judgment will be affirmed.          *Judgment affirmed.*