GABRIEL DE LA HABA ET AL., Petitioners, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener. SAN GERÓNIMO DEVELOPMENT CO., INC., Petitioner, *v.* THE SAME, Respondent; THE SAME, Intervener.

Nos. 277 and 278. Argued November 14, 1952.—Decided July 19, 1954.

*Córdova & González* and *Gabriel de la Haba* and *Rafael Buragaño, Jr.,* for petitioners. *José Trías Monge, Attorney General, (Víctor Gutiérrez Franqui, Attorney General,* on the brief) and *Manuel J. Medina Aymat, Assistant Attorney General,* for the intervener, defendant in the main action.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Under § 298 of the Political Code our property tax is assessed to the "owner" of real property. The question presented in these cases is whether a "lessee" of real property for approximately 1,000 years is required to pay the property tax as an "owner" of real property within the meaning of § 298.[1]

---

[1] Section 290 of the Political Code read in part "That all property not expressly exempted from taxation shall be assessed and taxed." See Act No. 30, Laws of Puerto Rico, 1951.

Section 291 of the same Code exempts property of the United States and of The People of Puerto Rico from taxation. See Section 1 of Act No. 120, Laws of Puerto Rico, 1951.

Section 298 provided in part "That all real property shall be assessed in the municipality in which the real property lies to the person who is either the owner or in possession thereof on the fifteenth day of January, and the person appearing of record on the fifteenth day of January shall be held to be the true owner thereof." (Section 298 was amended by changing January 15 to January 1. See Act No. 133, Laws of Puerto Rico, 1950; Act No. 62, Laws of Puerto Rico, 1952).

There have been a number of amendments of these Sections which are not relevant here. Unless otherwise indicated, when citing Sections of the Political Code, we refer to the version found in Compilation of the Revised Statutes and Codes of 1911, p. 549 *et seq.* See *Sucn. Pedro Giusti, Inc.* v. *Tax Court,* 70 P.R.R. 109, 112, footnote 1.

In 1921 the United States, represented by the Secretary of the Navy, "leased" to Virgil Baker, his heirs and assigns a portion of the San Gerónimo Naval Reservation at San Juan for a period of 999 years.[2] The lease—and the statute authorizing it, 42 Stat. 122, 139, 140—provided that in time of war or national emergency the Navy Department shall have free and unlimited use of the land leased to Baker. The history of this transaction is set forth in an opinion of our Court of Appeals upholding the lease in a suit brought by the United States to cancel the lease for fraud. *Baker* v. *United States*, 27 F. 2d 863 (C. A. 1, 1928), cert. denied, 278 U. S. 656.

In 1929 the President of the United States—by a proclamation issued under authority of § 7 of the Organic Act for Puerto Rico, 39 Stat. 951, 954, 48 U.S.C. § 748—conveyed to the People of Puerto Rico all the right, title and interest of the United States in certain lands which included the Baker tract. 46 Stat. 3004. In a case involving the right of the Navy Department to use the Baker tract during World War II without payment of compensation therefor, the Court of Appeals concluded that the right of free user reserved in the 1921 statute and lease was not dependent on the title remaining in the United States. Accordingly, the Court held that the conveyance by the United States to the People of Puerto Rico in 1929 by the presidential proclamation of "the technical reversion in fee remaining in the United States"[3] in the Baker tract after the 999-year lease did not deprive the United States of its right reserved in the 1921 statute and lease of free and unlimited use thereof

---

[2] In using hereinafter the words "lease" and "sublease" to describe the interest in this tract of Baker and his assigns, we are not to be understood as indicating that, for purposes of § 298 of the Political Code, they were lessees rather than owners of land. That, of course, is precisely the question before us.

[3] *United States* v. *San Gerónimo Development Co.*, 154 F. 2d 78, 87 (C. A. 1, 1946).

in time of war or national emergency. *United States* v. *San Gerónimo Development Co.*, 154 F. 2d 78 (C.A. 1, 1946).[4]

In 1930 Baker assigned all his remaining interest in the land in question—the lease which still had 990 years to run—to the San Gerónimo Development Co., Inc., hereinafter referred to as the corporation. On various dates in 1938 and 1939 José R. Rosales, Gabriel de la Haba, Julio T. Rodríguez, and José R. Mora each became a "sublessee or assignee"[5] of a different parcel of the Baker tract by virtue of deeds executed by each of them and the corporation. In 1939 de la Haba acquired an additional parcel in the same manner. No rent as such was fixed in the deeds. Instead, each sublessee or assignee paid a lump sum for the rights obtained by him in the particular parcel. These sums varied with the size and location of the parcels, and the deeds recited that for purposes of recordation the sums represented the values of the respective parcels. In each case the rights of the sublessee or assignee in the tract were for the remainder of the 999-year period which had not yet expired, or approximately 981 or 982 years. The four subleases or assignments to individuals were made without any restrictions except for a provision that the parcels could be used only for residential purposes. All the transactions involving the Baker tract were duly recorded in the appropriate Registry of Property.

In 1949 the Treasurer of Puerto Rico notified the corporation and the four sublessees or assignees of the imposition of the property tax for the years 1946–47, 1947–48, 1948–49 and 1949–50 on the portions of the Baker tract in

---

[4] The Court pointed out in the *San Gerónimo* case that the reserved right of user was personal and could not be transferred to the People of Puerto Rico. It could only be released to Baker or his successors in interest by the United States. However, the President had no authority under § 7 of the Organic Act to make such a release nor did he attempt to do so in the 1929 proclamation. *United States* v. *San Gerónimo Development Co., supra*, pp. 85–6.

[5] The Court of Appeals calls them "sublessees or assignees" in *United States* v. *San Gerónimo Development Co., supra*, p. 82.

which each of them held the above-described interests. The corporation and the four individuals sued the Treasurer in the former Tax Court to set aside the imposition of these taxes. The cases of the four individuals were consolidated and tried together. The case of the corporation was tried separately, but was decided on the basis of the opinion filed in the case of the individuals. Both cases were decided by the former Tax Court in favor of the Treasurer. We granted the two petitions for certiorari—one filed by the corporation; the other filed jointly by the individuals—to review the decisions of the former Tax Court dismissing the complaint. We shall dispose of both cases in a single opinion, as they involve, for our purposes, the same questions of fact and of law.

In dismissing the complaint, the former Tax Court reasoned in substance as follows: The conclusions of the Court of Appeals in the *Baker* and *San Gerónimo* cases as to the nature of the rights created in the tract in favor of Baker and his assignees by the 999-year lease are binding on the courts of Puerto Rico, although not technically *res judicata* in the instant case. The Court of Appeals indicated in the *Baker* case that the parties clearly intended to give Baker the right of permanent use and enjoyment of the tract. A long term lease was used to transfer the tract to Baker rather than an absolute transfer of title in order to avoid any doubt as to the right of free user by the Navy Department in time of war or emergency. In the *San Gerónimo* case the Court of Appeals pointed out that the United States, and now Puerto Rico, had only a *technical* right of reversion after expiration of the 999-year lease.

In view of the foregoing and of the form and contents of the various notarial documents, the former Tax Court drew the following conclusions: Subject to the right of free user by the Navy Department in time of war or national emergency, Baker obtained an irrevocable lease in per-

petuity. Except for the name given to the transaction, the 999-year lease was a sale "pure and simple". The subsequent deeds were called subleases solely to harmonize them with the name given the original transaction. For purposes of § 298 of the Political Code, the petitioners, in possession of the land with the right to use it in perpetuity, are the owners thereof and consequently must pay our property tax under § 298. It would be absurd to hold that the United States or Puerto Rico is the owner of the tract, from the point of view of the practical effect of § 298, merely because Puerto Rico has the technical right to obtain the fee, effective in ten centuries. Insofar as § 298 is concerned, this right of Puerto Rico, to take effect in 1,000 years, is a "non-existent right." Imposing the property tax on the petitioners does not constitute taxation of property belonging to Puerto Rico, which is exempt under § 291 of the Political Code. The fact that the petitioners must pay the property tax does not impair the right of free user in the Navy Department during a war or emergency. A purchaser of the parcels of the petitioners at a tax sale because the petitioners failed to pay the property tax would take title subject to the right of free user, of which such a purchaser has notice by virtue of the recordation thereof in the Registry of Property.

The individual petitioners assign 11 errors. The corporate petitioner assigns 4 errors. A number of these errors overlap and need not be considered separately. However, we have examined them all carefully and believe that those which warrant discussion have received adequate consideration in the course of this opinion.

 We cannot agree with the petitioners that under the doctrine of *res judicata* or collateral estoppel the Treasurer is barred from contending in this case that the petitioners are liable for our property tax under § 298 of the Political Code.[6] In the first place, the People of Puerto Rico inter-

---

[6] For our cases on *res judicata* and collateral estoppel, see generally *Blanco* v. *Capital of Puerto Rico*, decided May 17, 1954 *; *Long Corporation*

vened in the *Baker* case for a limited purpose, *Baker* v. *United States, supra,* p. 877. Secondly, Puerto Rico was not a party in the *San Gerónimo* case. But what is more important is that in these two cases the Court of Appeals did not pass on the question presented here. In the *Baker* case the 999-year lease from the United States to Baker was upheld in a suit filed by the United States to cancel the lease for fraud. In the *San Gerónimo* case it was held that the reserved right of free user by the United States in time of war or national emergency had not been extinguished by the transfer by the United States to Puerto Rico of the "technical reversion in fee" remaining in the United States after the expiration of the 999-year lease. Neither of these cases involved—and the Court of Appeals did not discuss—the question of whether the nature and scope of the interest of Baker or his assigns in the 999-year lease was one of ownership within the meaning of § 298 of the Political Code requiring the "owner" of real property to pay our property tax.

It is true that in the course of its opinions in the *Baker* and *San Gerónimo* cases the Court of Appeals uses language which describes the 999-year "lease" as a leasehold interest.[7]

---

v. *District Court,* 72 P.R.R. 737, 740; *Miller* v. *Cía. Ron Carioca Destilería, Inc.,* 71 P.R.R. 662; *Avellanet* v. *Porto Rican Express Co.,* 64 P.R.R. 660, 667; *People* v. *Lugo,* 64 P.R.R. 529, 533; *Heirs of Rivera* v. *Lugo,* 63 P.R.R. 13; *Laloma* v. *Fernández,* 61 P.R.R. 550.

\* EDITOR'S NOTE: The opinion in the case is published together with the opinion on reconsideration rendered on December 22, 1954, in Vol. 77.

[7] In the *Baker* case the material portions of the contract between the United States and Baker are set forth at p. 869. The document is designated by the parties as a "Lease". It recites that the United States ". . . does hereby lease to . . . Baker . . . and his heirs and assigns, for . . . 999 years . . . for such use and improvement as they may deem proper . . . " the tract therein. The "Lease" goes on to provide that " . . . this lease is granted in lieu of the complete transfer of title provided for in previous agreements . . . ". It also recites that ". . . the Navy Department shall retain title . . . " to the land, and shall have free use thereof in time of war or national emergency. The Court again refers to the transaction as a "lease" at p. 876.

Similarly, in the *San Gerónimo* case the Court at p. 81 quotes from the "Lease" and calls it a "lease". At p. 82, footnote 1 the Court says

On the other hand, in explaining that the device of a 999-year lease—rather than an absolute transfer of title to Baker—was used to safeguard the reserved right of free user by the United States, the Court of Appeals speaks several times of the permanent transfer of the use and enjoyment of the tract to Baker.[8] Obviously, the attention of the Court of Appeals was not focused on the question before us. The two Court of Appeals cases involved problems wholly different from the question presented here. The language the Court uses in those two cases is not addressed to the problem before us and is not conclusive in the instant case. We fail to find any possible basis for invoking the doctrine either of *res judicata* or of collateral estoppel in this case by virtue of anything the Court of Appeals held or said in the *Baker* and *San Gerónimo* cases.[9]

---

the tract was "leased to Baker". And at pp. 86 and 87 it refers to the transaction as a "long-term lease" which provided that the United States "shall retain title" to the land and that the United States had a "technical reversion in fee" after the expiration of the 999-year "lease".

[8] In the *Baker* case at p. 868 the Court quotes a House Committee Report which indicates that the Act of Congress was designed to provide authority for "the permanent transfer" of the tract to Baker. The Court at p. 868 refers to the transaction as an "exchange of property". The Court at p. 869 quotes a letter from the Secretary of the Navy stating that the land had been "permanently leased" to Baker. At p. 870 the Court speaks of the "land transferred". The Court at p. 869 says the following: "It appears that the form of the transfer, namely, a long lease, was undoubtedly adopted by the Navy Department in order that there should be no question of retaking the entire property from the defendant Baker, without cost, 'in case of war or national emergency.'" Finally, the Court says at p. 870: "The proofs show that there was a clear intention to give a permanent right of use and enjoyment of about 12 acres of land . . . ".

In the *San Gerónimo* case the Court points out at p. 80 that during the negotiations Baker " . . . sought to obtain ownership of the tract leased to him." It states at p. 81 that the Act of Congress was enacted in order to give the Secretary of the Navy " . . . power to lease or permanently transfer . . . " the tract to Baker. And at p. 82 the Court refers to the petitioners as " . . . sublessees or assignees".

[9] *Cf. Developments in the Law—Res Judicata*, 65 Harv.L.Rev. 818, 842–6, and authorities cited therein, as to types of facts and issues of law to which the application of collateral estoppel is limited; *N.L.R.B.* v. *Thayer Co. et al.*, 213 F. 2d 748, (C.A. 1, June 3, 1954).

874

■■ On the merits, the position of the petitioners is as follows: The Legislature has the power to impose a property tax on a leasehold interest in land. However, it has chosen not to exercise this power; instead, it has imposed the said tax on the "property or thing itself", and has under § 298 of the Political Code required the "owner" to pay it. As sublessees or assignees of Baker, the petitioners have leasehold rather than ownership interests in the tract since the contract between Baker and the United States was a lease rather than an absolute transfer of ownership by the United States. Consequently, the petitioners, as sublessees or assignees, are not liable for the property tax as "owners" of real property. On the contrary, the "owner" of the tract is either Puerto Rico or the United States, both of which are exempt from the property tax under § 291 of the Political Code.[10]

In support of the foregoing contention, the petitioners make an elaborate argument as to the differences between a lease and a dominion title under the law of Puerto Rico. They point out that sales of real property are governed by § 1334 et seq. of the Civil Code, 1930 ed., whereas leases are covered by § 1432 et seq. of the same Code. They cite §§ 280–1 of the Civil Code; 10 Manresa, Comentarios al Código Civil Español, 2d ed., pp. 7 et seq. and pp. 444 et seq.; Rossy v. del Valle, 34 P.R.R. 696, 700–1; and 51 C.J.S. § 202, p. 808, as demonstrating that a sale of land transfers ownership, which includes both title and right of possession, while a lease grants only the right of use and enjoyment of the land. And the petitioners argue that in the absence of a constitutional or statutory prohibition both under the civil and common law there is no limitation as to the length of a lease so long as the parties agree, citing 32 Am. Jur. § 64,

---

[10] The petitioners apparently make the alternative contentions that either Puerto Rico or the United States is the "owner" of the tract because (1) Puerto Rico has "the technical reversion in fee" after 999 years and (2) the United States has a reserved right of free user in time of war or national emergency.

p. 79, and 51 C.J.S. § 29, p. 535. And see *Monbar, Inc.* v. *Monaghan*, 162 Atl. 50 (Del., 1932) ; Note, Ann.Cas. 1914A, p. 349; Annotation, 17 A.L.R. 2d 566. The petitioners also rely on the fact that the original lease and the subleases were all recorded in the Registry of Property as leases without any defects noted thereon by the Registrar.

We do not stop to examine the contentions of the petitioners (1) that the original "lease" and the "subleases" are leases rather than transfers of dominion title under our Civil Code and Mortgage Law, and (2) that a lease for 999 years is valid under our property law. Moreover, we agree that the Legislature did not provide in § 298 of the Political Code that lessees holding under an ordinary lease for a conventional period are required to pay the property tax. But those are not the questions before us. Rather this case involves the problem of whether a person who is entitled to possession and use of land under a "lease" for approximately 980 years is the "owner" of the land within the meaning of a tax statute, § 298 of the Political Code. Under those circumstances the tax statute and not the Civil Code or the Mortgage Law is controlling. *Albanese* v. *Secretary of the Treasury, ante*, p. 302, and cases cited.

▮ There is another argument made by the petitioners which is likewise inconclusive here because it involves property law and not the tax statute. The petitioners contend as follows: Section 290 of the Political Code provides that, for purposes of the property tax, real property shall be deemed to be synonymous with immovables, as defined in § § 261–3 of the Civil Code, 1930 ed.; leases are not immovables under § § 261–3; consequently, the ten-century leases herein are not taxable under § § 290 and 298 of the Political Code. But to say that the petitioners have only leases and that leases are not taxable under the statute is to beg the question presented for decision here; *i.e.*, whether a "lessee" of real property for 999 years is an "owner" thereof under § 298.

The result we reach here is not affected by the contention of the petitioners that §§ 285–352 of the Political Code make it clear that what is taxed is the land—a thing—in a physical sense; that no property tax is imposed on such rights as leaseholds, usufructs or easements; and that the tax is imposed on the land and on the basis of the value thereof, irrespective of the nature, number and value of other real rights therein. We fail to see any connection between these points and the basic problem before us as to whether the Legislature intended to include a "lessee" with a ten-century lease as an "owner" of land within the meaning of § 298 of the Political Code.

The petitioners rely on the provision in § 298 that " . . . the person appearing of record on the fifteenth day of January [under the 1950 amendment, the first of January] shall be held to be the true owner . . . " of real property for purposes of assessment of the property tax to the "owner". The petitioners point to the fact that the dominion title to the Baker tract was recorded in favor of the United States and is now recorded in the name of Puerto Rico. Accordingly, the petitioners argue that either the United States or Puerto Rico must be conclusively "held to be the true owner . . . " of the tract, making the tract exempt from the property tax under § 291 of the Political Code. We cannot agree. The foregoing language in § 298 operates as a convenient reference point for the benefit of the state for the purpose of collecting the property tax. Cf. Act No. 62, Laws of Puerto Rico, 1952, amending § 298. But no person who has all the practical attributes of ownership may rely on that language to resist collection of the property tax from him as the "owner" of real property merely because the parties to a transaction chose to affix the label of "owner" to another alleged interest in land which for all practical purposes carries with it none of the rights of ownership. Irrespective of the validity of such a trans-

action as a matter of civil or mortgage law, the impact of § 298 as a taxing statute is not so easily avoided.

■ The petitioners point to language in § § 303, 315, 333 and 340 of the Political Code and § 168 of the Mortgage Law which makes it clear that the thing being taxed is "real property". We fail to see in what way the language of these Sections favors the contention of the petitioners. The latter also call our attention to the provision in § 333 that "A tenant or lessee of real property may pay the taxes and surcharges thereon at any time after the same may have become delinquent and may deduct the same from his rent." We readily agree that this portion of § 333 supports the contention, which the Secretary of the Treasury does not dispute, that ordinary lessees are not liable for the property tax. But once more we cannot accept without further ado the premise that this case involves an ordinary lease rather than an interest in land which, although called a "lease" in the pertinent documents, is in effect ownership thereof.

■■ The petitioners contend that to call them "owners" of the tract for purposes of § 298 of the Political Code would create an insoluble dilemma with reference to the reserved right of free user by the United States. Their premise is that under § § 315 and 347 of the Political Code the purchaser of real property sold for non-payment of taxes obtains an absolute title thereto (§ 347) "free from all mortgages, liens or other encumbrances". They then argue that to hold that a purchaser at a tax sale would receive a title free of the reserved. right of user would be to violate the holding of the *San Gerónimo* case that this reserved right remains in the United States. On the other hand, according to the petitioners, to hold that a purchaser at a tax sale would take title subject to the reserved right of free use would be to violate the provision in § 347 of the Political Code that such a purchaser receives an absolute title.

The answer is obvious. We of course agree with the premise of the petitioners that in the usual case a purchaser at a tax sale receives absolute title to the real property he purchases. *Riera* v. *Registrar*, 57 P.R.R. 659. But we have an overriding factor in this case. "We are dealing here with a right reserved in the Baker lease pursuant to the explicit command of Congress, which . . . [had] . . . plenary legislative power in the premises." *United States* v. *San Gerónimo Development Co., supra*, p. 85. (Matter in brackets ours). Under the peculiar circumstances of this case a limitation exists on the otherwise unfettered terms of § 347 inasmuch as the reserved right of free user in the United States may not be impaired, either by application to the tract of the terms of § 347 or by any other means.[11] It follows that the dilemma envisaged by the petitioners does not exist. A purchaser at a tax sale in this particular case would take title to the petitioners' parcels subject to the reserved right of free user by the United States, of which the said purchaser would have notice by virtue of the recordation thereof in the Registry of Property.[12]

---

[11] The petitioners cite § § 208, 215, 217, 220, 221–3, and 230–1 of the Restatement, Conflict of Laws, and 51 C.J.S., § § 4 and 231, pp. 513 and 848, respectively, for the proposition that even the United States is bound by the laws of Puerto Rico as to the nature of the interests in land created by the Baker lease. And *cf. The RFC Mortgage Co.* v. *Registrar*, 60 P.R.R. 230. But for the reasons given in the text of the opinion, that general proposition has no bearing on this tax case in which this Court is interpreting the scope of a tax statute, § 298 of the Political Code, as applied to a peculiar real estate transaction to which the United States was a party.

[12] The fallacy of the petitioners' argument on this point is exposed by two other possibilities: (1) they concede that the Legislature could if it chose specifically tax such long-term leases; (2) the Court of Appeals indicated in the *San Gerónimo* case that the fee could have been validly conveyed to Baker, subject to the reserved right of free user, footnote 14, *infra*. In either of these hypothetical situations the petitioners—as lessees or as owners—would undoubtedly be liable for the property tax despite the fact that in both of them § 347 would present exactly the same problem with reference to the reserved right of free user by the United States as we have in the present case.

■■ Shortly stated, in order to decide this case we must put aside the question of the nature of the petitioners' interest in the Baker tract as a technical matter of property law. Instead, we must ascertain whether the Legislature intended in § 298 of the Political Code to require the "lessee" under a 999-year "lease" to pay the property tax. And to answer the latter question we must consider the reasoning of the Court of Appeals in the *Baker* and *San Gerónimo* cases and the terms of the "leases" and "subleases". In so doing we shall not revert to the question we have put to one side; namely, whether the petitioners are "owners" of land as a matter of property law. Rather we shall examine the Court of Appeals cases and the documents under which the petitioners are in possession of their parcels solely to determine whether the rights of the petitioners in the Baker tract are such that, although holding under ten-century "leases", they are "owners" of land within the meaning of that word as used in § 298 of the Political Code and therefore subject to the property tax.[13]

We are convinced that, under the Act of Congress authorizing the Baker lease, the documentary evidence and the surrounding circumstances, the petitioners, as "sublessees or assignees" of Baker, are for all practical purposes the "owners" of the parcels of land involved herein within the mean-

---

[13] The petitioners also contend that the former tax Court erred in characterizing the original lease and the subleases as "sales pure and simple" and as leases "in perpetuity". Rather, according to the petitioners, they hold long-term subleases for a fixed period. But this is simply another way of stating the same question; namely, whether the petitioners are owners or lessees of their parcels as a matter of civil or mortgage law. As already noted, we are not concerned in this case with the proper label of the transactions for purposes of property law. Whatever that may be as a matter of civil or mortgage law, the question remains as to whether a lease for almost a thousand years constitutes ownership of land for tax purposes under § 298 of the Political Code.

For the same reason, we find it pointless to discuss the criticism by the petitioners of the statement by the former Tax Court that the right of the People of Puerto Rico to obtain dominion title to the tract is "nonexistent" because it does not become effective for 10 centuries.

880

ing of § 298 of the Political Code requiring the "owner" of real property to pay the property tax thereon. The parties to the original transaction, as revealed by the *Baker* and *San Gerónimo* cases, consistently spoke and wrote in terms of a permanent transfer of the tract in question. It was finally decided to make this permanent transfer in the form of a 999-year lease rather than a conveyance of the fee in order to avoid any possible question as to the reserved right of free user by the United States in time of war or national emergency. This was of course agreeable to Baker precisely because it was equivalent to ownership for practical purposes. It is true that subsequently the Court of Appeals indicated in its opinion in the *San Gerónimo* case that the precaution of technically retaining the fee in order to safeguard the reserved right of free user was unnecessary.[14] But the Navy Department could not predict in 1921 that the courts would take that position. It therefore "retained the title", not to withhold from Baker and his assigns any of the benefits flowing from a dominion title, but solely to protect its reserved right of free use. It seems obvious that the parties entered into an arrangement whereby Baker would receive all the benefits of ownership, but the Navy Department would retain a paper title to take effect in 1,000 years solely out of an abundance of caution in order to protect its right of free user. The "title" which remained in the United States after the 999-year lease was a mere shadow which had no practical value and not even any technical purpose except the unnecessary one just mentioned.

The foregoing view is reinforced by the fact that, except for the label of "lease", all the other attributes of the trans-

[14] In the *San Gerónimo* case the Court of Appeals refused (p. 85) "to try to fit the reserved right into one of the traditional categories of property law, either under the system of the common law or of the civil law". And it stated that " . . . the Secretary of the Navy could have conveyed the fee to Baker but still, by force of the Act of 1921, Baker would have held the fee subject to the aforesaid reserved right of free user."

actions were those normally found in a transfer of title in fee. Baker was not required to pay rent as such: he received the tract in consideration of (1) the transfer by him to the United States of a parcel of land and easements, (2) past services and (3) the sum of one dollar. It is significant that Baker was not even required to pay symbolical rent of $1 a year. The payment of one dollar, together with items (1) and (2), was in complete payment for the life of the "lease". In the same way, the "sublessees" paid lump sums rather than periodic rent for the right to use their parcels for approximately 980 years. And the deeds whereby parcels were "subleased" to the individual petitioners recited that for purposes of recordation the said lump sums represented the value of the parcels. *Cf.* Annotation, 17 A.L.R. 2d 566, 569.[15] For all practical purposes, the latter "bought" their portions of the tract; the transactions were characterized as "leases" in the pertinent documents in order to keep them in harmony, for registry purposes, with the original "lease". To hold under those circumstances that Baker or his assigns were not "owners" of land under § 298 of the Political Code would be to exalt form over substance in the eminently practical field of taxation. We are unable to take that position in this case. On the contrary, we hold that the petitioners, being entitled under their "leases" to the use and enjoyment of land for almost ten centuries, are the "owners" of the said land under § 298 and are therefore required to pay the property tax thereon. *Cf. Porto Rico Telephone Co.* v. *Tax Court*, 68 P.R.R. 144, 147-48.

The conclusion we have reached is supported by the cases decided in continental United States. Leases of this length, or of a shorter period renewable forever, are practically and

---

[15] We are not suggesting that there never could be a lump-sum lease. See *The People* v. *The Registrar*, 22 P.R.R. 746, 755-7. But normally at least a lease provides for payment periodically of stipulated rent. No such provision was made here in either the original "lease" or the "subleases".

"substantially the grant of a fee . . ." I American Law of Property, p. 369; *id.,* pp. 210–1. And such leases are almost uniformly held to be taxable to the lessee as the "owner" of the property. Annotation, 55 A.L.R. 154; *Piper* v. *Town of Meredith,* 139 Atl. 294 (N.H., 1927); *United States* v. *Erie County, N. Y.,* 31 F. Supp. 57, 59 (Dist. Ct., N. Y., 1939). *Cf.* Annotation, 59 A.L.R. 701. The petitioners seek to distinguish these cases. First, they assert that leaseholds in those jurisdictions are considered "real property". For reasons already noted, that question is irrelevant here. Secondly, the petitioners claim that the terms of the tax statutes in the states in question are different from § 298. However, they make this statement without pointing to any substantial difference and we know of none. A lessee under an *ordinary* lease of land belonging to the state is not required to pay the property tax under our statute or under similar statutes. *The People* v. *The Registrar, supra,* 758–9; *San Pedro etc. R.R. Co.* v. *Los Angeles,* 167 Cal. 425 (1914). But once more it must be pointed out that we are not dealing here with an ordinary lease.[16]

The language used by the Supreme Court in a substantially similar case applies here. The Court said in *J. W. Perry Co.* v. *Norfolk,* 220 U. S. 472, 478:

" . . . The contract creates an estate somewhat like the perpetual lease of the civil law, where the tenant was for many purposes treated as owner, and liable for taxes. Merlin Rep., Vol. 10, p. 232; Cooper's Inst. 277, 278; Sohmn's Inst., 3d ed., 346. It was also similar in its nature to ground rent, where an annual rental and public taxes are perpetually charged on the land, instead of a gross sum being paid or

---

[16] As to whether ordinary leaseholds or buildings are subject to property tax where the owner of the fee is exempt from taxation, see Annotations, 23 A.L.R. 248; 98 A.L.R. 1372; *Jetton* v. *University of the South,* 208 U. S. 489; *Portland Terminal Co.* v. *Hinds,* 39 A. 2d 5 (Me., 1944); *The Long Term Ground Lease: A Survey,* 48 Yale L. J. 1400, 1405, footnote 35.

For a general discussion of the problems raised by long-term leases, see 2 Powell on Real Property, Part III, p. 341 *et seq.*

secured. There the grantor is treated as having a fee in the rent reserved, and the grantee a fee in the land, subject, among other things, to the payment of public taxes. Duane on Landlord & Tenant, 96; Cadwallader on Ground Rent, 101; *Robinson* v. *County of Allegheny*, 7 Pa. St. 161.

"The Court of Appeals held that in Virginia the general rule that the landlord is responsible for the taxes 'has no application to the case of a perpetual leaseholder where the tenant is in effect the virtual owner of the property and entitled to its use forever. For the purposes of taxation the mere legal title remaining in the landlord will be disregarded.' It adopted that part of the language in *Wells* v. *Savannah*, 87 Ga., 397, affirmed in 181 U. S. 531, where, in speaking of the liability of one who had a perpetual lease and a right to convert it at will into a fee, Judge Bleckley said: 'The value of property consists in its use, and he who owns the use forever, though it be on condition subsequent, is the true owner of the property for the time being.' *Crowe* v. *Wilson*, 65 Md., 479; *Brainard* v. *Mayor of Colchester*, 31 Connecticut, 407."

*Palmer* v. *Connecticut Ry. Co.*, 311 U. S. 544, involved a different problem from that presented here. But in his dissenting opinion Mr. Justice Douglas used language which supports our view of this case. He said at page 564, in discussing a 999-year lease, that "From our point in history 969 years hence is perpetuity." He then wrote at pp. 567-8 as follows:

"The problem of determining the present value of this unexpired term of 969 years is not different from the problem of valuing a fee interest.

"The fact that this instrument is called a 'lease' is no barrier to such an appraisal. For, as stated by this Court in *Union Pacific Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.*, 163 U. S. 564, 582, where a so-called 'lease' was construed: 'What it was styled by the parties does not determine its character or their legal relations.' The court has not only the power but the duty to determine its real character by consideration of all its intrinsic and extrinsic characteristics. *Id.*, at p. 582. A lease renewable forever or a lease in perpetuity (as here) is the equivalent of a fee interest. It has been so treated in Connecticut, where the instant lease was made, for purposes

884

of taxation. *Connecticut Spiritualist Camp-Meeting Assn.* v. *Town of East Lyme,* 54 Conn. 152, 155–156; 5 A. 849. As stated in *Piper* v. *Meredith,* 83 N. H. 107, 110; 139 A. 294, 'It is a well settled law that a perpetual lease upon condition conveys to the lessee a determinable or base fee.' Or as stated in *Whittelsey* v. *Porter,* 82 Conn. 95, 102, a 999 year lease is 'practically a fee defeasible only upon failure to perform certain conditions.' And see *Montgomery* v. *Town of Branford,* 107 Conn. 697, 702; 142 A. 574; *Wells* v. *Savannah,* 181 U.S. 531; *Leary* v. *Jersey City,* 248 U.S. 328; *Trustees of Elmira* v. *Dunn,* 22 Barb. 402. The mere reversionary interest of the lessor in a perpetual lease is so remote and speculative as to defy valuation. See *Chicago West Division Ry. Co.* v. *Metropolitan West Side Elevated R. Co.,* 152 Ill. 519, 524–526; 38 N. E. 736. As stated by the Supreme Court of Errors of Connecticut, the reversion under a 999 year lease becomes a 'mere imaginary estate.' *Brainard* v. *Town of Colchester,* 31 Conn. 407, 411. Whatever may be the precise catalogue of all rights of the lessee (*Goodwin* v. *Goodwin,* 33 Conn. 314; *Dennis Appeal,* 72 Conn. 369; 44 A. 545) and whatever may have been the business and legal reasons for use of the 999 year lease rather than the acquisition of the assets by merger, consolidation or otherwise, it is plain that for all practical purposes the lessee retains such full control and such complete enjoyment of the the property that he may properly be treated as the owner. Such a lease is in effect 'a practical sale'. *Lord* v. *Town of Litchfield,* 36 Conn. 116, 126." [17]

_____

[17] Here also the "reversionary interest . . . is so remote and speculative as to defy valuation." The record shows that instrumentalities of the government of Puerto Rico purchased or condemned the right to the use and enjoyment under the lease and the "right, title and interest" of the corporate petitioner in portions of the tract. Compensation therefor was undoubtedly calculated on the theory that in substance "ownership" was being transferred. That is to say, we doubt very much that the lump-sum prices fixed therefor were reduced in any amount whatsoever because of "the technical reversion in fee" to Puerto Rico in 1,000 years. That is because, as stated in another context, there is " . . . no rational means by which to determine the value of the possibility that at some . . . [remote] . . . time in the future the land . . . [will] . . . revert to the People of Puerto Rico. All that can be done is to venture a guess, and it is elementary law that damages cannot be assessed by mere guesswork." *People of Puerto Rico* v. *United States,* 132 F. 2d 220, 222 (C.A. 1, 1942), cert. denied, 319 U.S. 752.

In view of the foregoing, we see no escape from the conclusion that the petitioners,. as "sublessees o assignees" for approximately 1,000 years of portions of the Baker tract, are "owners" of real property under § 298 of the Political Code and are therefore required as such to pay the property tax thereon.[17a]

 The petitioners next rely on administrative practice. Unquestionably, the property tax has always been assessed to the owner in fee and not to the lessee of real property. Lessees have not been required to pay the property tax irrespective of whether the owner in fee was a private person or a tax-exempt entity. *The People* v. *The Registrar*, *supra*, 758–9. But that particular administrative practice, which conforms to the law, plays no role here. The very issue in this case is whether a 999-year "lease" constitutes "ownership" under § 298. To rely on such an administrative practice is to beg the question presented by this case.[18]

---

[17a] We have not overlooked two cases cited by the petitioners: *People* v. *Armour Fertilizer Works*, 53 P.R.R. 207, holding that taxing statutes are interpreted restrictively, and *Fajardo Sugar Co.* v. *Treasurer of P. R.*, 22 P.R.R. 290, 298, in which this Court stated that some things of value are not taxed under our statute. Neither of these cases has any bearing on the problem in this case.

[18] In 1947 the Puerto Rico Industrial Development Company "subleased" a portion of the Baker tract from the San Gerónimo Development Co., Inc. for the remaining period of the 999-year lease. In 1949 the former assigned its rights therein to the Puerto Rico Industrial Investment Corporation. The petitioners rely on the fact that neither of these companies, which are instrumentalities of the government of Puerto Rico, has been required to pay property taxes on the said "subloase". However, this scarcely constitutes an administrative practice which could affect the result here. Assuming without deciding that these companies are not exempt from the payment of the property tax, they are in substantially the same position as the petitioners: The property tax has not been previously paid by the comparatively few sublessees of one tract of land, the Baker tract; the Secretary of the Treasury is now asserting it should be paid. To hold that the failure to assess such taxes previously constituted an administrative practice sufficient to bar their collection at this time would be to permit the petitioners to lift themselves by their own bootstraps.

886

The petitioners also rely on the administrative practice which was in effect until 1949 of not assessing the property tax to individuals who were usufructuaries of lots under cessions by municipal governments of land belonging to the latter. These cessions were made pursuant to § 70 of Act No. 53, Laws of Puerto Rico, 1928, and the said usufructuaries were not required to pay the property tax except where the Legislature enacted special statutes providing for assessment of such taxes in particular municipalities for specific purposes. Act No. 174, Laws of Puerto Rico, 1941, as amended by Act No. 224, Laws of Puerto Rico, 1942, repealed by Act No. 122, Laws of Puerto Rico, 1951; Act No. 104, Laws of Puerto Rico, 1937, repealed by Act No. 52, Laws of Puerto Rico, 1938.[19]

There are two reasons why the administrative practice as to such usufructuaries is not decisive here. In the first place, the Legislature, wishing to encourage the construction of houses, authorized the municipalities in § 70 to " . . . grant lots in perpetuity for the construction of houses thereon . . . " And § 70 apparently relieved such usufructuaries of the property tax in providing as follows: "Among the terms of the concession made in each case, that of payment of an annual rental to the municipality making the concession may be prescribed, which rental shall be at least equal to the amount of the property tax which would appertain to said property if such property were subject to the payment of such tax, and in the aforesaid concession there shall also be stipulated that any building on the property leased shall be subject to the payment of taxes." If § 70 did as a matter of law exempt these usufructuaries from the property tax, we can see no basis for a complaint by the petitioners against such legislative classification. More-

[19] According to the petitioners, their case is even stronger than that of the usufructuaries of municipal lots because (1) the United States did not divest itself of the property in perpetuity but instead retained title thereto, and (2) the United States reserved a right of free user.

over, today the problem no longer exists as the property tax or rent in lieu thereof has been made applicable to these usufructs. Act No. 120, Laws of Puerto Rico, 1951; Act No. 2, Laws of Puerto Rico, 1951, Fifteenth Special Session.[20]

Secondly, and more important, an administrative practice sheds light on the meaning of a statute only if it is doubtful or ambiguous. *Sucn. Pedro Giusti, Inc.* v. *Tax Court, supra*, p. 132, and cases cited. Here § 298 of the Political Code so clearly covers the instant case that any administrative practice calling for a different result would be contrary to law and therefore not decisive on the question of the meaning of the statute. "When a statute is clear,. no taxpayer can take refuge in an administrative interpretation or regulation to the contrary." *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, 892. See *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 255–56, and cases cited.[21] Where the language of a tax statute is unambiguous, it must be applied as the Legislature wrote it, not as this Court or the Secretary of the Treasury might wish to read it. *Community of the Heirs of Fajardo* v. *Tax Court*, 73 P.R.R. 499, 505–06; *Clínica Dr. Mario Juliá, Inc.* v. *Secretary of the Treasury, ante*, p. 476. We therefore give no weight, for purposes of this case, to the failure of the then Treasurer to assess the property tax on usufructuaries of municipal property until 1949.

 The petitioners also raise several constitutional questions: due process of law, equal protection of the laws and impairment of the obligation of contracts. None of these

---

[20] In its Statement of Motives in Act No. 120 the Legislature points out that no taxes have been paid in the past on these usufructs because " . . . such lots have never been assessed . . . " It goes on to state that " . . . [a]ccording to an opinion from the office of the Attorney General, these usufructs are subject to the property tax laws." But it then makes it clear that " . . . *on and after the effective date* of this Act the property tax laws shall apply to these usufructs." (Italics ours.)

[21] Statements by the Attorney General of Puerto Rico in his brief and by the trial judge in his opinion in the *Baker* case that the Baker "lease" was not subject to our property tax are of course not controlling here.

is a substantial question. The due process point is predicated on the theory that no statute authorizes the tax. As we have seen, § 298 clearly does. The petitioners argue that they are being denied equal protection of the laws because they are being required to pay the property tax whereas other lessees and usufructuaries of municipal governments are being relieved thereof by administrative action. We need add nothing to what has already been said as to (1) the difference between the "subleases" of the petitioners and ordinary leases, and (2) the validity of treating the petitioners and the usufructuaries of municipalities differently prior to 1949. The petitioners cite no case which specifically supports their position and we have found none.[22] Under these circumstances we fail to see how we can hold that requiring the petitioners to pay the property taxes they owe denies them the equal protection of the laws.

The petitioners argue that subjecting them to our property tax impairs the obligation of the contract between Baker and the United States. Their theory is that the original lease provided that the United States shall retain title to the tract, whereas to assess the property tax thereon is in effect to establish that title was not retained but was transferred to Baker. This is of course a repetition of the same argument which we have rejected so many times in this opinion. We have held that the kind of interest created in Baker by the original lease is taxed by § 298. That interpretation of § 298 has nothing to do with the constitutional prohibition against impairment of the obligation of contracts. The petitioners concede that their interests in the tract would be taxable if § 298 were amended to include such "leases". By the same token, they are taxable under our conclusion that § 298 already covers them. We find no impairment of the obligation of contracts in this case.

_____

[22] *Lugo* v. *Suazo*, 59 F. 2d 386 (C.A. 1, 1932) ; *Harvey Bros.* v. *Treasurer*, 56 P.R.R. 251; *P. R. & Am. Ins. Co.* v. *Gallardo, Treas.*, 35 P.R.R. 842; and *The People* v. *Neagle*, 21 P.R.R. 339, relied on by the petitioners, are not in point here.

■ Finally, the petitioners contend that the property tax as applied to them is invalid as constituting a tax on property belonging to the United States which is prohibited under the rule laid down in *Domenech* v. *National City Bank*, 294 U.S. 199. The *Domenech* case does not apply here because (1) Puerto Rico, not the United States, has the theoretical and illusory right of ownership, effective in ten centuries, and (2) the interest in land of the petitioners, not of the United States or Puerto Rico, is being assessed in this case.

For the reasons stated, the then Treasurer acted correctly in assessing the property tax to the petitioners for the years 1946–47, 1947–48, 1948–49 and 1949–50.[23]

The decisions of the former Tax Court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[23] This case is of course confined to its facts. We do not hold or suggest that a lessee under a considerably shorter lease would be required under § 298 of the Political Code to pay the property tax.