**UNITED STATES v. SAN GERONIMO DEVELOPMENT CO., Inc., et al.**

**SAN GERONIMO DEVELOPMENT CO., Inc., v. UNITED STATES.**

Nos. 4074, 4075.

Circuit Court of Appeals, First Circuit.

March 4, 1946.

Roger P. Marquis, J. Edward Williams, and Vernon L. Wilkinson, Department of Justice, all of Washington, D. C., Philip F. Herrick, U. S. Atty., District of Puerto Rico, of San Juan, P. R., for United States.

Ryder Patten, of San Juan, P. R., for appellee San Geronimo Development Co., Inc.

Gabriel de la Haba, of San Juan, P. R., for appellees de la Haba and Mera.

H. S. McConnell, of San Juan, P. R., for appellee Pedro A. Pizá.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

These are cross-appeals, in which the petition filed by the United States in the court below is somewhat of an unfamiliar hybrid, and the substantive question upon which the decision turns is a special and non-recurring one as to which there are no precedents to indicate the answer.

In No. 4074, the United States claims that during the war emergency the Navy Department is entitled to the free use and occupation of a certain tract of land in Puerto Rico under a right reserved in a lease for 999 years executed by the Navy Department to one Virgil Baker in 1921, pursuant to authority of § 5 of the Naval Service Appropriation Act approved July 12, 1921, 42 Stat. 139, 140. On the other hand, appellees assert that this reserved right of free user was in effect extinguished or released by a presidential proclamation of August 26, 1929, 46 Stat. 3004, transferring to the People of Puerto Rico all right, title, and interest of the United States in a part of the Military Reservation of San Juan known as the San Geronimo tract, or the San Geronimo Naval Reservation, in which said Baker tract was included; such transfer having been made under authority of § 7 of the Organic Act for Puerto Rico, 39 Stat. 954, 48 U.S.C.A. §§ 747, 748. The District Court was persuaded to the latter view, and proceeded to adjudge to the various parties in interest the amounts of just compensation due them upon condemnation of the temporary use of the Baker tract.

In No. 4075, one of the parties in interest, San Geronimo Development Co., Inc., claiming that the amount awarded to it was inadequate, filed a cross-appeal from the final judgment below.

We are of opinion that the United States should prevail in its appeal in No. 4074. Hence, the question presented in No. 4075 becomes academic, and San Geronimo Development Co., Inc., must necessarily fail in its cross-appeal.

In 1919 the San Geronimo tract, part of the Military Reservation of San Juan owned by the United States, was formally transferred to the Navy Department and became known as the San Geronimo Naval Reservation. In that year the Navy Department leased to Lieutenant Commander Virgil Baker, Retired, an unused portion of the reservation for a term of five years, with permission to Baker to erect and occupy a concrete dwelling thereon. Baker at that time was in charge of the naval radio station at San Juan. There followed a series of negotiations between Baker and the Navy Department in which Baker sought to obtain ownership of the tract leased to him. These negotiations are reported at length in the opinion of this court in Baker v. United States, 1 Cir.,

1928, 27 F.2d 863, certiorari denied 1929, 278 U.S. 656, 49 S.Ct. 185, 73 L.Ed. 565. As a result there was included in the Naval Service Appropriation Act of July 12, 1921, at the request of the Secretary of the Navy, the following provision: "Sec. 5. That as consideration for a suitable site and requisite rights, privileges, and easements for a receiving and distant-control radio station in Porto Rico the Secretary of the Navy be, and he hereby is, authorized to exchange or lease for such period as he may deem proper any land under naval control in Porto Rico not otherwise required for naval purposes: Provided, That in time of war or national emergency, if necessary, the Navy Department shall have without cost free and unlimited use of any land so exchanged or leased." 42 Stat. 122, 139, 140.

The foregoing provision was enacted to give the Secretary of the Navy power to lease or permanently transfer to Baker the tract of land involved in the present appeals. See the legislative history set forth in Baker v. United States, supra, 27 F.2d 863, at pages 866-868. Pursuant to this statutory authority, an agreement of lease was entered into on July 15, 1921, between the United States, represented by the Acting Secretary of the Navy, and Lieutenant Commander Baker.

This lease, after lengthy recitals, provided as follows:

"Lease

The Secretary of the Navy, representing the United States of America and the Navy Department, and having been duly authorized by the Congress under the provisions of Section 5 of the Naval Appropriation Act approved by the President of the United States on July 12, 1921, does hereby Lease to the said Lieutenant Commander Virgil Baker, U. S. Navy (retired) and his heirs and assigns, for a period of nine-hundred and ninety-nine (999) years from the date hereof, for such use and improvement as they may deem proper, the following described site of land with right of way thereto, which site of land is not otherwise required for Naval purposes and is located in the San Geronimo naval reservation in the Island of Porto Rico: [Then follows a description by metes and bounds].

The Lease of the above-described site of land in the San Geronimo Naval Reservation is made in consideration of the transfer, by the said Lieutenant Commander Virgil Baker, U.S.Navy (Retired), and his wife, Stella May Baker, to the United States of America, represented by the Secretary of the Navy, of a Tract of Land and Easements for a distant-control radio station in Porto Rico, as described in the Deed number Twenty-eight executed on the seventh day of June, nineteen hundred and twenty, at San Juan, Porto Rico, before the Notary Don Eduardo Acuna Aybar, and in further consideration of the payment this date to the United States of America of the sum of one dollar ($1.00) by the said Lieutenant-Commander Virgil Baker, U. S. Navy (retired); and in recognition of services rendered by him in the war against the German Empire and in other wars; and in recognition of valuable services rendered by him in May, nineteen hundred and twenty, while not on active duty, which services aided materially in saving the U. S. Army Transport Northern Pacific, then stranded in a dangerous position on a reef off the Island of Porto Rico.

In accordance with the desire of the party of the first part this Lease is granted in lieu of the complete Transfer of Title provided for in previous agreements hereinbefore mentioned, and is accepted by the party of the second part in complete and entire satisfaction of all such previous agreements. It is also mutually understood and agreed that this Lease is not revocable except by mutual agreement of both parties, but that the Navy Department shall retain title to said site of land and, in accordance with the Provisions of the Act of Congress authorizing the Grant of this Lease, it is mutually understood and agreed that the Navy Department shall have in time of war or national emergency, if necessary, free and unlimited use, without cost, of the site of land herein leased. * * * *"

In Baker v. United States, supra, the United States brought suit to cancel the Baker lease for fraud, but this court upheld the lease and directed that the complaint be dismissed.

On August 26, 1929, the President of the United States, under authority of § 7 of the Organic Act for Puerto Rico, issued a proclamation reading in part as follows:

"A PROCLAMATION.

"WHEREAS, by Act of Congress approved March 2, 1917 (39 Stat. 951), entitled 'An Act to provide a civil government for Porto Rico and for other purposes' it is provided, 'That the President may from time to time, in his discretion, convey to the People of Porto Rico such lands, build-

ings, or interests in lands or other property now owned by the United States and within the territorial limits of Porto Rico, as in his opinion are no longer needed for purposes of the United States';

"AND WHEREAS, the President, by an Executive Order of June 30, 1903, reserved for military purposes certain lands designated as the Military Reservation of San Juan, and said Military Reservation included the tract known as San Geronimo hereinafter described.

"AND WHEREAS, the said tract, known as San Geronimo, and hereinafter more particularly described (excepting approximately five acres thereof), is no longer needed for the purposes of the United States but is required for public use by the People of Porto Rico,

"NOW, THEREFORE, in pursuance of the authority vested in me by the Act of March 2, 1917, aforesaid, all the right, title, and interest of the United States in and to the following described tract of land is hereby transferred and conveyed to the People of Porto Rico, viz:

"[Here follows a description of the tract transferred [1]]."

The case turns upon whether the reserved right of free user of the Baker tract survived to the Navy Department after the transfer effected by this presidential proclamation. We shall examine at a later point the terms of the proclamation and their legal effect.

Since 1921, by derivation from Baker, the tract has been subdivided into parcels held by various sublessees or assignees. In 1930 Baker assigned all his remaining interest to the San Geronimo Development Co., Inc., a corporation the stock of which was wholly owned by Baker and his wife.

Upon the outbreak of war in December, 1941, the Navy Department desired to use and occupy the Baker tract pursuant to the right reserved in the 1921 lease. The parties who had succeeded to Baker's interest in the tract were willing for the Navy Department to make wartime use of the premises, but refused to concede that the United States was entitled to such use without payment of just compensation.

Thereafter, the United States, at the request of the Secretary of the Navy, filed in the court below its petition and amended petition for condemnation of "the temporary use and occupancy" of the Baker tract "for the duration of the present state of war." It was recited that "The Acting Secretary of the Navy has determined that it is necessary to acquire for naval purposes the interest in the property hereby condemned"; and that the proceeding was instituted under authority of Title II of the Second War Powers Act of March 27, 1942, 56 Stat. 177, 50 U.S.C.A.Appendix § 632, and the Act of August 1, 1888, 25 Stat. 357, 40 U.S.C.A. § 257. The petition also contained the following paragraph: "This proceeding shall be without prejudice to the rights of the United States of America to dispute the claim of any party for compensation for the property taken, or any part thereof; it is not, nor shall it constitute, an admission that any compensation is due therefor; it shall not operate as an estoppel against the United States of America in opposing any claim for compensation, and it is without prejudice to the rights of the United States, or the Navy Department thereof, which exist by virtue of the Act of Congress approved July 12, 1921, or any lease made pursuant to said Act, or by virtue of any other law or contract."

The prayer of the petition was that judgment be entered condemning the said interest in the tract to the use of the United States, ascertaining "the amount of compensation or damages, if any, to be paid for the said interest in the said property and determining the parties entitled thereto, if any." It was further prayed that an order be entered decreeing that the United States is entitled to possession of the premises and that its agents "are authorized to enter upon said premises and take full and complete possession thereof on August 1, 1942."

The unusual feature of this petition for condemnation will be noted. Ordinarily, a petition for condemnation is filed to acquire for the use of the government an interest in property which it does not at present have. If, however, the Navy Department, by virtue of § 5 of the Naval Service Appropriation Act of July 12, 1921, and of the terms of the Baker lease executed under that statutory authority, already had the right to the free use and occupation of

---

1 All of the tract leased to Baker was included in the larger area transferred. The proclamation made reference to "the tract heretofore leased to Virgil Baker", in describing the boundaries of a 5-acre parcel of the San Geronimo tract excepted and reserved from the area conveyed to the People of Puerto Rico.

the premises during the war emergency, the United States had no need to exercise its power of eminent domain. The validity of its claim to the right of free user might be tested by a complaint for a declaratory judgment or by a bill for specific performance of the provisions of the Baker lease, or by some appropriate possessory action. In its petition the United States asked in effect for an adjudication that its right reserved in the Baker lease was valid and subsisting and entitled it to the wartime use and occupation of the premises for naval purposes without compensation to the various persons holding subleases derived from Baker; and, in the alternative, if that claim should be denied, it asked for a judgment condemning an interest in the tract and determining the amounts of just compensation payable to the various respondents named in the petition. Under the peculiar circumstances, there was much good sense in combining these alternative and mutually exclusive theories in a single proceeding, and we are not prepared to say that the procedure followed was inappropriate.

When the present litigation commenced, unimproved parcels of the Baker tract were held by San Geronimo Development Co., Inc., Gabriel de la Haba, Jose Mera, and Pedro A. Piza, who are the appellees in No. 4074. Certain other parcels contained improvements erected thereon since 1921. Rather than litigate the question whether the right of free wartime user reserved to the Navy Department in the Baker lease included the use and occupation of structures subsequently erected on the premises, the United States entered into stipulations with the sublessees of the improved parcels agreeing to pay to them specified annual rentals for the temporary use and occupation of the structures, such sublessees on their part waiving claim for compensation for the occupation of the lands. After deposit by the United States of the agreed amounts, judgment of condemnation of these improved parcels was entered by the District Court pursuant to the stipulations; the various sublessees of such parcels are therefore not concerned in the pending appeals.

■ Appellees in No. 4074 suggest that this court is without jurisdiction in that case. We have no doubt that the United States appealed within the statutory period and that we have jurisdiction:

The District Court gave two final judgments of condemnation. The first one, on October 2, 1944, condemned the parcels of de la Haba, Mera, and San Geronimo Development Co., Inc., and fixed the amounts of just compensation to these parties respectively. By stipulation this judgment was corrected in details not now important by an amended judgment entered December 13, 1944. The United States filed notice of appeal from this judgment on December 28, 1944. The second judgment of condemnation, covering Piza's parcel, was entered February 15, 1945, but purported to be nunc pro tunc as of June 21, 1944. On March 1, 1945, the United States filed notice of appeal from this judgment. No. 4074 is a consolidation of the two foregoing appeals taken by the United States.

■ Before proceeding to determine the amounts of just compensation upon the basis that the taking was pursuant to the power of eminent domain, the District Court first heard the claim of the United States to the free user of the tract. On January 18, 1943, the District Court filed an "Opinion" which contained the following: "My conclusion is that the right of the Navy to occupy this land ceased when the President conveyed and transferred the interest of the United States to the People of Puerto Rico. It follows, necessarily, that compensation must be paid for the use and occupancy of the several properties involved in this proceeding and now occupied by the United States." It is contended that the decision of January 18, 1943, was a "final decision" within the meaning of 28 U.S.C.A. § 225, and that the United States lost its right to appeal upon the expiration of three months from that date. But an appeal cannot be taken from an opinion as such, even though the opinion may contain a ruling; judgment must be entered pursuant thereto before the statutory period begins to run. See Commissioner v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157. In the settled practice of the court below, the document entitled "Opinion" is not also regarded as the judgment itself, but a formal judgment is filed and entered after the opinion is handed down. After the opinion of January 18, 1943, was filed, the only thing that could be deemed a judgment entered pursuant thereto was an "Order" filed on the same day, reading as follows:

"For the reasons stated in the preceding opinion

"It is hereby ordered that this cause be set down for trial on the question of com-

pensation due the defendants, on such date as counsel may agree upon or as may be fixed by the Court upon motion."

It is obvious, without the need of elaborate argument, that this order was merely interlocutory in character, not a "final decision". Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631.

Piza urges a different ground for his contention that the appeal by the United States was untimely taken. On May 17, 1944, a stipulation was entered into between the United States and Piza in which the parties agreed that if the United States was obliged to pay for the use of the unimproved parcel held by Piza as sublessee, "an annual rental of $1,750.00, without interest, shall be full satisfaction and just compensation for the taking by the United States". The stipulation provided that the court was "hereby authorized and petitioned to enter without further notice a final judgment and decree in this action" condemning the parcel to the temporary use of the United States and adjudging the just compensation in accordance with the stipulation. It was also provided in the stipulation that, "Said final judgment and decree shall be and shall contain a provision to the effect that it is without prejudice to petitioner's right to appeal from the determination of its liability to pay compensation for the use and occupancy of said lands in any amount." On May 31, 1944, the District Court filed its "Findings of Fact and Conclusions of Law" pursuant to stipulations entered into by the United States with several parties, including Piza. Under the heading "Findings of Fact", the District Court found that just compensation for the use of the parcel held by Piza and his wife Carmen Goenaga was at the rate of $1,750.00 per annum, amounting to $3,062.50 for the period from August 1, 1942, to April 30, 1944. Under the heading "Conclusions of Law" the court recited:

"4. That upon the deposit into the Registry of this Court of the aggregate of the amounts above specified, a judgment of appropriation and condemnation in form provided by law shall be made and entered herein.

"5. That in connection with the parcel of land subleased by Pedro A. Piza and Carmen Goenaga, this judgment shall be subject to the provision that it is without prejudice to petitioner's right to appeal from the determination of its liability to pay compensation for the use and occupancy of said land in any amount."

On June 21, 1944, the United States made a deposit of the sum agreed upon as just compensation for the use of the parcel held by Piza. But the District Court failed at that time to enter its final judgment of condemnation, as had been contemplated in paragraph 4 of the Conclusions of Law of May 31, 1944, quoted above. On February 15, 1945, the District Court filed an order or memorandum reciting that the United States had moved for entry of a final judgment of condemnation as contemplated in the Findings of Fact and Conclusions of Law filed on May 31, 1944. Further, the court stated that, had the matter been called to its attention when the deposit was made on June 21, 1944, "the formal judgment certainly would have been entered then. I think this is a case in which the Court should enter a judgment, nunc pro tunc." Thereupon, on February 15, 1945, the court entered its final judgment of condemnation of the parcel held by Piza, but the judgment recited: "This judgment is entered as of June 21, 1944."

It does not matter that it was only by oversight that the judgment had not been entered on June 21, 1944. Either party could have moved at any time thereafter for entry of the judgment, but until judgment was entered no appeal could be taken. The United States cannot be deprived of its right to appeal from the judgment actually entered February 15, 1945, by the attempt of the court to enter the judgment nunc pro tunc. Providence Rubber Co. v. Goodyear, 1867, 6 Wall. 153, 156, 18 L.Ed. 762. There is an effort on Piza's part to make out that the United States was in some way "estopped" to deny that the Findings of Fact and Conclusions of Law entered May 31, 1944, constituted a final judgment. That document does not purport to be a judgment;[2] upon the contrary it recites that a judgment of condemnation will be entered in the future upon

---

[2] At a later point in the proceedings the District Court described this document filed May 31, 1944, as "Findings of Fact, Conclusions of Law, and Preliminary Judgment fixing just compensation for the temporary use and occupancy of the properties therein described". Just why it was so characterized is not made clear; but at any rate it was not the "final" judgment, which the court recognized the necessity of entering on February 15, 1945.

the deposit of the amount specified. This was as obvious to Piza as it was to the United States. The subsequent making of the deposit could not amount to a representation that judgment had been entered, because it was contemplated that the judgment would be entered after the deposit was made. We find no basis for any "estoppel" in the present record.

This brings us to a consideration of the merits. It is appropriate to examine first the nature of the right reserved to the Navy Department by the terms of the Baker lease, and then to discuss the legal effect of the presidential proclamation of August 26, 1929.

■ The District Court expressed the view "that the provision in the Baker lease created a covenant which runs with the land." Appellees argue that the right which the United States is now asserting is in the nature of an easement in gross, and that such a property interest is unknown to the jurisprudence of Puerto Rico. In our opinion it is beside the point to try to fit the reserved right into one of the traditional categories of property law, either under the system of the common law or of the civil law. We are dealing here with a right reserved in the Baker lease pursuant to the explicit command of Congress, which has plenary legislative power in the premises. As has been set forth above, Congress authorized the Secretary of the Navy "to exchange or lease" the tract in question, but at the same time enacted the proviso that "in time of war or national emergency, if necessary, the Navy Department shall have without cost free and unlimited use of any land so exchanged or leased." Thus the Secretary of the Navy could have conveyed the fee to Baker but still, by force of the Act of 1921, Baker would have held the fee subject to the aforesaid reserved right of free user. If the reserved right in that case would properly have been called an easement in gross, nevertheless as a right created under authority of an Act of Congress it would necessarily have had to be recognized and enforced by the courts. In other words, under § 5 of the Naval Service Appropriation Act of July 12, 1921, the reserved right was not made dependent upon the continued possession of the fee by the United States.

It also seems to be clear that the reserved right is personal to the United States, since the Act of 1921 subjects the transferee or lessee of the tract only to the burden of the free and unlimited use by the Navy Department, if necessary, in time of war or national emergency. If, after executing the Baker lease, the United States had transferred the fee to some private person, it is obvious that such transfer would not carry with it a right in the transferee to the free and unlimited use of the tract in time of war or national emergency. And so, too, a transfer of the fee to the People of Puerto Rico would not carry with it a right in the insular government, which incidentally has no navy department, to use the tract free of charge in wartime. In either of these two situations, it could not be assumed that the reserved right was transferable because that assumption would necessarily involve an enlargement of the scope and purpose of the reservation which Congress insisted upon in the Act of 1921.

■ Therefore, the reserved right could not be transferred to the People of Puerto Rico; it could only be released to the Baker interests by the United States. The presidential proclamation of August 26, 1929, does not contain apt words of release. Nor do we see any warrant in the situation for implying an intention to release the reserved right.

■ In the first place, we do not think the President had any authority to make such a release. He was given general power by § 7 of the Organic Act, 48 U.S. C.A. § 748, to transfer to the People of Puerto Rico lands or interests in lands "no longer needed for the purposes of the United States." But a later Act, passed with reference to this specific tract of land, authorized the Secretary of the Navy to transfer or lease such tract to a private party, subject, however, to the mandatory provision that the Navy Department would retain the right of free wartime user. The Act of 1921 did not give to anyone in the executive branch of the government authority to release this reserved right. The authority in § 7 of the Organic Act, under which the President may transfer lands or interests in lands to the People of Puerto Rico, would seem to be limited to interests in land which by their nature are capable of transfer to the People of Puerto Rico, and not to empower the President to release to Baker or his assigns the reserved right of wartime user. Authority to make a public grant of land to the insular government can hardly embrace authority to offer a private gratuity to the Baker interests.

But even if it be assumed that the President had power to release the reserved right, there is no ground for inferring an intention to do so, either in the language of the proclamation or in the circumstances of its execution. The Baker tract was only a small part of a larger area conveyed to the People of Puerto Rico by the terms of the proclamation. Referring, of course, to the area in its entirety, the proclamation uses broad language transferring "all the right, title, and interest of the United States" therein. There was no particular reason why the United States should retain title to the reversion of the Baker tract after a 999-year lease. The San Geronimo tract had been part of a military reservation within the exclusive jurisdiction of the United States, but its transfer to the People of Puerto Rico brought the whole area within the jurisdiction of the civil and criminal laws of Puerto Rico. It can be seen then that there was sufficient reason for transferring to the People of Puerto Rico the reversion in fee of the Baker tract without at the same time releasing the reserved right to the Baker assignees. Release of this reserved right would have been of no benefit to the People of Puerto Rico. The insular government in receiving a transfer of the reversion of course took subject to the Baker lease; and it would be a matter of entire indifference to the insular government whether the United States subsequently made wartime use of the Baker tract under the reserved right of free user or under the power of eminent domain, with compensation payable to the Baker interests. As this court pointed out in Baker v. United States, supra, 27 F.2d 863 at page 871, the tract leased to Baker was of little value to the government in time of peace, but its possible value to the government "in time of war or national emergency" was recognized, and under the terms of the Baker lease "this value it still retains; and it is relieved from the burden of caring for it in time of peace." In construing a proclamation purporting to transfer rights to the People of Puerto Rico, we search in vain for any indication of an actual intention to release to the Baker interests the reserved right of wartime user —a release which would result in no benefit to the insular government but would only accrue as a windfall to Baker and his assigns. Such a release, moreover, would mean the relinquishment by the United States of a right which was one of the inducements for making the long-term lease of the tract to a private party.

■ Appellees make the further point that the Act of 1921 reserved to the Navy Department the free wartime user of the Baker tract only "if necessary," and this, they say, requires a trial of the issue of necessity and a finding of such necessity by the court before the reserved right could be exercised. This court said, in Baker v. United States, supra, 27 F.2d 863 at page 870, that the Navy Department retains the right of the free use of the tract in case of war or of any national emergency, "the department necessarily being the judge of what constitutes such 'emergency'"; and we think that the Department is also the judge of the need for making use of the tract in the emergency. We agree with the United States that the term "if necessary" in the Act of 1921 was "intended to vest in the Secretary of the Navy the same discretion to take the land temporarily as he would have in a condemnation proceeding." The Secretary of the Navy requested the Attorney General to institute the present proceeding, which necessarily involved a determination by the proper administrative official that the use and occupation of the tract was necessary for naval purposes during the war emergency. See Bragg v. Weaver, 1919, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; United States v. 243.22 Acres of Land, 2 Cir., 1942, 129 F.2d 678, 683, certiorari denied sub nom. Lambert v. United States, 1943, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558.

■ The recital by the President in his proclamation of August 26, 1929, that the tract "is no longer needed for the purposes of the United States" is clearly not a binding determination for all time that the United States will never need to make temporary use of the tract for naval purposes during some later period of war emergency.[3] In this connection it is relevant to

---

[3] Furthermore, under § 7 of the Organic Act, the prescribed determination by the President relates only to the particular interest in land which is to be conveyed to the People of Puerto Rico— here the reversion in fee after the expiration of the 999-year lease. Since, as pointed out above, the reserved right of wartime user was not and could not be transferred to the People of Puerto Rico, there was no requirement of a determination by the President that such interest was no longer needed for the purposes of the United States.

point out that § 5 of the Act of 1921 authorizes the Secretary of the Navy to transfer or lease any land under naval control in Puerto Rico "not otherwise required for naval purposes"; and the execution of the Baker lease by the Secretary of the Navy pursuant to such authority necessarily involved a determination that the tract was "not otherwise required for naval purposes." But that determination did not mean that the Navy Department would never have need of making temporary use of the tract in time of future war or national emergency; otherwise, the insistence by Congress upon the reservation of a right of free wartime user, "if necessary," would have been an idle and meaningless gesture.

A further argument is predicated upon the following provision of the Baker lease: "It is also mutually understood and agreed that this Lease is not revocable except by mutual agreement of both parties, but that the Navy Department shall retain title to said site of land and, in accordance with the Provisions of the Act of Congress authorizing the Grant of this Lease, it is mutually understood and agreed that the Navy Department shall have in time of war or national emergency, if necessary, free and unlimited use, without cost, of the site of land herein leased."

It is said that the United States made a breach of this provision of the lease (1) by filing its unsuccessful suit for cancellation of the lease for fraud, Baker v. United States, 1 Cir., 1928, 27 F.2d 863, and (2) by transferring the fee to the People of Puerto Rico in 1929; and that these breaches constituted such failure of consideration as to release the lessee from his covenant to allow the Navy free wartime use of the tract.

Without considering other possible defects in the foregoing argument, it is enough to say that neither of the acts mentioned constituted a breach of any covenant in the lease. A lease or other contract is not revocable except by mutual agreement where the same contains no provision for unilateral revocation; hence the term in the lease above quoted was really a superfluity. A suit to set aside the lease for fraud in its inception is not an attempted revocation of the lease; and the filing of such suit does not excuse the lessee from performance of his covenants, especially where the lessee prevailed in his contention that there was no fraud and that the lease was valid and subsisting. The statement that "the Navy Department shall retain title to said site of land" did not constitute a promise by the United States never to convey away the fee some time in the future, but merely stated the understanding of the parties as to the legal effect of the transaction, namely, that Baker was to have a lease for 999 years, with the technical reversion in fee remaining in the United States. At one stage in the prior negotiations between Baker and the Navy Department, it had been contemplated that there would be a complete transfer of title to Baker. Notwithstanding this, Baker accepted the long-term lease "in complete and entire satisfaction of all such previous agreements." Nothing in the prior negotiations indicated that Baker attached any importance to the retention of the reversion in fee by the United States during the 999-year period of the lease, or intended to exact from the United States any promise that such reversion would not thereafter be conveyed away. Nor is the reserved right of free user based upon a covenant by the lessee. The above-quoted reference in the lease to the Act of 1921 merely expresses the understanding of the lessee that the lease was necessarily subject to such reserved right by force of the mandatory provision of the Act of Congress. Such reserved right would have come into existence by operation of law even in the absence of any specific reference to it in the lease.

Our conclusion is that judgment should have been entered by the court below adjudging and declaring that the United States was entitled to the free and unlimited use of the tract in question for naval purposes during the war emergency.

In No. 4074 the judgments of the District Court entered October 2, 1944, December 13, 1944, and February 15, 1945, are each vacated, and the case is remanded to the District Court for further proceedings in conformity with this opinion. In No. 4075 the appeal is dismissed.