Artemio IGLESIAS COSTAS et al.,
Plaintiffs-Appellants,

v.

SECRETARY OF FINANCE OF PUERTO
RICO, Defendant-Appellee.

No. 4875.

United States Court of Appeals,
First Circuit.

March 30, 1955.

G. Ortiz del Rivero, San Juan, Puerto Rico, with whom J. J. Ortiz Alibran, San Juan, Puerto Rico, was on brief, for appellants.

José A. García-Malpica, Asst. Atty. Gen., with whom José Trías Monge, Atty. Gen., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico sustaining the Secretary of Finance in his assessment of deficiencies against appellants in respect of their income taxes due to the Commonwealth Government.

Appellants are three separate growers of sugarcane in Puerto Rico. Over the period 1944 through 1948 each of them made various applications to the U. S. Secretary of Agriculture for conditional sugar subsidy payments under the Sugar Act of 1937, as amended, 50 Stat. 909–12, 54 Stat. 571, 55 Stat. 872, or under the corresponding provisions of the Sugar Act of 1948, 61 Stat. 929–932, 7 U.S.C. §§ 1131–1137. Their several claims were duly approved by the Secretary of Agriculture for payment, under the procedure prescribed by the Sugar Acts and the applicable regulations; and the authorized subsidy payments were made in routine course.

In filing their returns under the Puerto Rican Income Tax Act, all the appellants reported these subsidy payments as income for the growing years to which they severally applied. Appellants thought that they were entitled, indeed obliged, to do this, since they all employed the accrual method of accounting—a method sanctioned by §§ 14(b) and 15(a) of Act 74, approved August 6, 1925, Laws P.R. 1925, pp. 432, 434, which provisions are substantially identical with §§ 41 and 42(a) of the Internal Revenue Code 26 U.S.C.A. §§ 41, 42(a), applicable to the federal income tax.

However, the Secretary of Finance ruled that under the accrual method of accounting, as he understood it, these sugar subsidy payments should be treated as income in the respective fiscal years in which the U. S. Secretary of Agriculture approved the subsidy applications for payment; on this basis he adjusted the tax returns of appellants and assessed deficiencies against each of them for several fiscal years. Each appellant instituted a judicial proceeding in the insular courts to challenge these deficiency assessments. They won favorable judgments in the Superior Court. But the Secretary of Finance appealed the three cases to the Supreme Court of Puerto Rico, where the cases were consolidated since they presented the same question of law. By a single judgment entered March 3, 1954, the Supreme Court of Puerto Rico reversed the three judgments of the Superior Court and remanded the cases to that court for further proceedings, for the reasons set forth in a companion case decided by the Supreme Court on the same day. The present appeal is from the aforesaid judgment of March 3, 1954.

As a preliminary to a discussion of the merits of this appeal, it is necessary to have in mind the scheme of the Acts of Congress under which the subsidy payments in question were made to these appellants.

By the terms of the two Sugar Acts, Congress authorized the Secretary of Agriculture to make certain subsidy payments to sugar producers provided it was determined by the Secretary that the producer had complied with various conditions of production during the crop year in question. That is, the producer must not have employed the labor of any child under the age of 14 (with a penalty deduction of $10 per day for each child so employed); the workers on the farm must have been paid wages at rates not less than those that may be determined by the Secretary to be fair and reasonable after investigation and due notice and opportunity for public hearing (if there are any accrued unpaid wages, the same to be paid to the employees, and the balance of the authorized subsidy to be paid to the producer); the subsidy applicant must not have marketed or processed an amount of sugar in excess of the farm's proportionate share under the applicable

quota, as determined by the Secretary; if the producer is also a processor, he must have paid for sugarcane, grown by other producers and processed by him, at rates not less than those that may be determined by the Secretary to be fair and reasonable; and, under the 1937 Sugar Act, the producer must have carried out on the farm such farming practices for preserving the fertility of the soil and preventing soil erosion as the Secretary might determine.

It is perfectly true that at the end of any crop year the producer has either met these conditions precedent or he has not. If he has, and the Secretary so determines as a fact, then he gets his subsidy. At the end of a given sugar growing season, the producer may believe (and in the event it may be established, as in this case, that his belief was correct) that he had complied with all the conditions upon which the right to the subsidy depended. But the confirmation of such belief is dependent upon many complex determinations of fact by the Secretary; and numerous disputes of fact may well arise, and have to be resolved, before the Secretary approves an application for payment. It is a fact that the federal agency in charge of enforcing the Sugar Acts in Puerto Rico investigated every farmer under the program in order to determine whether such farmer had met the requirements of the Act; and the authorization of payment of the subsidy was not executed unless it was previously determined by means of such investigation that the requirements of the Sugar Act giving the right to the federal subsidy had been met. The Secretary's determinations in this respect are not merely ministerial; they are in the nature of quasi-judicial determinations, which may involve a considerable area of discretion in assessing the significance of complicated or perhaps contested issues of fact. Congress has prescribed that these factual determinations of the Secretary "shall be final and conclusive." What possibility there may be of judicial review of such determinations we do not undertake to say; but it is obvious that the collectibility of a claimed subsidy in the face of an adverse determination by the Secretary would be highly dubious at best.

Under 28 U.S.C. § 1293, this court has jurisdiction of appeals from final decisions of the Supreme Court of Puerto Rico "in all cases involving the Constitution, laws or treaties of the United States", and also "in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs."

■ In one loose sense this case may be said to be an appeal "involving" an Act of Congress, for in applying its notion of when the right to the sugar subsidy payments accrued, for the purpose of administering the terms of the insular income tax law, the Supreme Court of Puerto Rico had to look at the provisions of the two Sugar Acts under which Congress authorized the Secretary of Agriculture to make the subsidy payments in question. But we take it that the phrase in 28 U.S.C. § 1293, "in all cases involving the Constitution, laws or treaties of the United States" means about the same as the phrase in 28 U.S. C. § 1257(3), "or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of * * * the United States", whereunder the Supreme Court of the United States is given jurisdiction to review on certiorari federal questions involved in final judgments of the highest court of a State. Appellants in the case at bar did not present to the Supreme Court of Puerto Rico any substantial claim of a title, right, privilege or immunity under the Sugar Act. No provision of these Acts is concerned directly or indirectly with the manner in which sugar subsidy payments, when received by a grower, are to be taxed by an appropriate taxing authority. If the legislature of Puerto Rico had specifically provided, what the Supreme Court of Puerto Rico has held by construction, that sugar subsidy payments received by a Puerto Rican pro-

ducer shall be reported to the insular government as income in the fiscal year in which the Secretary of Agriculture approves such claims for payment, it could not be contended that such a local legislative provision would violate any term of the Sugar Acts. Effective administration of the subsidy provisions of the Sugar Acts does not require uniform income taxation of the subsidy payments, or a uniform construction of the time when such payments may be said to accrue, under a permissible accrual method of accounting. The instant case involves the construction of the meaning of accrual under the Puerto Rican Income Tax Act with respect to subsidy payments received, it so happens, under an Act of Congress; but the issue would not have been changed had the payments been received under a subsidy Act in comparable terms enacted by the legislature of Puerto Rico.

■ Essentially, therefore, we have before us on this appeal only a question of the local law of Puerto Rico, in respect of which we are not entitled to reverse the Supreme Court of Puerto Rico unless we can say that its judgment is inescapably wrong or patently erroneous. Sancho Bonet v. Texas Co., 1940, 308 U. S. 463, 60 S.Ct. 349, 84 L.Ed. 401; De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

■ In this view the issue we have to decide becomes an easy one. The Commonwealth of Puerto Rico, in applying its own income tax law, need not sanction the use of the accrual method of accounting at all; it may insist upon taxing income on a cash receipts basis. If it does, as it has, permit the taxpayer to choose the alternative of an accrual method of accounting—without further legislative prescription of detail—that necessarily leaves open for court decision a host of cases in which, as applied to particular situations of fact, legitimate differences of opinion may exist as to the proper allocation of income under the accrual method of accounting. Thus, the existence of a lia-

bility may be uncertain, the amount may be uncertain, collectibility may hinge on future contingencies. These possibilities often pose matters of degree, about which reasonable men may differ as to the proper tax consequences of the accrual method. The case law as to accrual under the federal income tax is not free from confusion and contradictions. Compare Commissioner of Internal Revenue v. Old Dominion S. S. Co., 2 Cir., 1931, 47 F.2d 148, with United States v. Harmon, 10 Cir., 1953, 205 F.2d 919. As stated in Paul & Mertens, Law of Federal Income Taxation (1934) § 11.65: "It need hardly be stated that questions of this character, in large part matters of accounting, are often the most difficult introduced in income-tax administration." And of course the Supreme Court of Puerto Rico in developing the local case law on the subject is not obliged to follow court decisions applying the accrual method of accounting for purposes of the federal income tax.

■■ As a matter of fact there do not seem to have been any court cases determining when the right to a subsidy payment under the Sugar Acts accrues for purposes of the federal income tax. However, soon after the passage by Congress of the Sugar Act of 1937, the United States Treasury made a ruling in the case of a sugar producer which kept its books on the accrual basis, that "conditional payments which it expects to receive under the Sugar Act of 1937 should be reported as income for Federal income tax purposes for the taxable year in which such payments are authorized by the Secretary of Agriculture." I.T. 3187, 1938–1 Cum.Bull. 159, 160. The reason given was that, prior to the meeting of the statutory conditions precedent "to the satisfaction of the Secretary of Agriculture, any right to such income is purely contingent and it is fundamental that contingent items should not be accrued for Federal income tax purposes." Of course such an informal ruling is not binding, even upon the Treasury. But the fact that such a ruling was made demonstrates.

that the Supreme Court of Puerto Rico in the case at bar did not dream up a preposterous and unheard-of application of the accrual method of accounting. Its decision was not lacking in a rational basis; we cannot say that the judgment appealed from, determining a point of local tax law, was inescapably wrong.

The judgment of the Supreme Court of Puerto Rico is affirmed.