**SAN GERÓNIMO DEVELOPMENT CO.,**
Inc., Petitioner, Appellant,

v.

**TREASURER OF PUERTO RICO et al.,**
Appellees.

No. 4913.

United States Court of Appeals
First Circuit.

Heard Feb. 7, 1956.

Decided April 30, 1956.

Nelson Gammans, New York City, for appellant.

Manuel J. Medina Aymat, Asst. Atty. Gen., with whom José Trias Monge, Atty. Gen., of Puerto Rico, was on brief, for appellees.

Before MAGRUDER, Chief Judge, and BIGGS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This case involves so-called "property" taxes assessed to appellant San Gerónimo Development Co., Inc., by action of the Treasurer of Puerto Rico on October 26, 1949, covering the tax years 1946–1947, 1947–1948, 1948–1949, and 1949–1950, in the aggregate amount of $27,938.26.

The nature of the property interest held by appellant that was thus subjected to local taxation resulted from a peculiar series of transactions which have been described extensively in two previous decisions of this court. See Baker v. United States, 1 Cir., 1928, 27 F.2d 863, certiorari denied 1929, 278 U.S. 656, 49 S.Ct. 185, 73 L.Ed. 565; United States v. San Gerónimo Development Co., Inc., 1 Cir., 1946, 154 F.2d 78, certiorari denied 1946, 329 U.S. 718, 67 S.Ct. 50, 91 L.Ed. 623.

In 1919 the San Gerónimo tract, a part of the Military Reservation of San Juan owned by the United States, was formally transferred to the Navy Department and become known as the San Gerónimo Naval Reservation. In that year the Navy Department leased to Lieutenant Commander Virgil Baker, Retired, an unused portion of the reservation for a term of five years, with permission to Baker to erect and occupy a concrete dwelling thereon. Baker at that time was in charge of the Naval Radio Station at San Juan. There followed a series of negotiations between Baker and the Navy Department in which Baker sought to obtain ownership of the tract leased to him.

As a result of these negotiations there was included in the Naval Service Appropriation Act of July 12, 1921, 42 Stat. 122, at the request of the Secretary of the Navy, the following provision:

"Sec. 5. That as consideration for a suitable site and requisite rights, privileges, and easements for a receiving and distant-control radio station in Porto Rico the Secretary of the Navy be, and he hereby is, authorized to exchange or lease for such period as he may deem proper any land under naval control in Porto Rico not otherwise required for naval purposes: *Provided*, That in time of war or national emergency, if necessary, the Navy Department shall have without cost free and unlimited use of any land so exchanged or leased." 42 Stat. 139.

The foregoing provision was enacted to give the Secretary of the Navy power to lease or permanently transfer to Baker the tract of land of which that involved in the present case formed a part. Pursuant to this statutory authority, an agreement of lease to Baker for 999 years was entered into on July 15, 1921, between the United States, represented by the Acting Secretary of the Navy, and Lieutenant Commander Baker. The document recited that the irrevocable lease to Baker and his heirs and assigns for 999 years "for such use and improvement as they may deem proper" was made in consideration of a certain deed of conveyance which Baker and his wife had already executed in favor of the United States of certain properties in Puerto Rico for a distant-control radio station. There was no provision for any annual rental payments and therefore no possibility existed that the United States might reenter the property before the expiration of the lease for nonpayment of rent. It is true the lease contained a covenant on the part of Baker to make certain improvements on the property. Thus there may have been at the outset a possibility of reentry by the United States for nonperformance of such covenant; but if so, this possibility has long

since become extinct (see Baker v. United States, supra, 27 F.2d at pages 864, 874) and may be left out of account so far as the interests of the present appellant are concerned.

It was recited in the lease that in accordance with the desire of the Navy Department this lease for 999 years was granted in lieu of the complete transfer of title provided for in previous agreements between the parties, and was accepted by Baker in complete and entire satisfaction of all such previous agreements. Also the lease provided, though this was probably unnecessary in view of the mandate in the Act of Congress, that it was mutually understood and agreed "that the Navy Department shall have in time of war or national emergency, if necessary, free and unlimited use without cost, of the site of land herein leased."

In Baker v. United States, supra, 27 F.2d 863, the United States brought suit to cancel the Baker lease for fraud and for nonfulfillment of the covenanted improvements, but this court upheld the lease and directed that the complaint be dismissed.

Since 1921, by derivation from Baker, the tract covered by the "lease" has been subdivided into parcels transferred to various sublessees or assignees.

In 1929, the President of the United States, under authority of § 7 of the Organic Act, 39 Stat. 954, 48 U.S.C.A. § 748, issued a proclamation transferring to the People of Puerto Rico "all the right, title, and interest of the United States" in and to the Military Reservation of San Juan, including the San Gerónimo tract under lease to Baker. Proclamation Aug. 26, 1929, 46 Stat. 3004. Thus the People of Puerto Rico became vested with the technical reversion in fee after the expiration of the 999-year lease. In the appropriate Registry of Property this dominion "title" of the People of Puerto Rico was duly recorded.

In 1930 Baker assigned all of his remaining interest under the "lease" to the San Gerónimo Development Co., Inc., appellant herein, a corporation the stock of which was wholly owned by Baker and his wife. On various dates in 1938 and 1939 appellant further subdivided the tract in question by assignments to Rosales, De la Haba, Rodríguez, and Mera. The respective parcels were transferred to these assignees for the remainder of the 999-year period. In each case the assignment was in consideration of a lump sum payment rather than in consideration of annual rental payments.

On October 26, 1949, the Treasurer of Puerto Rico assessed a property tax against San Gerónimo Development Co., Inc., on those portions of the old Baker tract still in appellant's possession during the taxable years; and he also made similar assessments against appellant's assignees Rosales, De la Haba, Rodríguez, and Mera. These parties paid the taxes so assessed, and brought suit in what was then the Tax Court of Puerto Rico, praying that the assessments be set aside and that the tax payments be refunded. The Tax Court held in favor of the Treasurer. Upon review by certiorari, the Supreme Court of Puerto Rico entered judgments affirming the judgments of the Tax Court. Appeal was then taken to this court by San Gerónimo Development Co., Inc., but not by Messrs. Rosales, De la Haba, Rodríguez, or Mera.

No challenge was made in the insular courts, nor before us, to the valuations by the Treasurer on the basis of which the taxes were assessed, appellant's consistent position having been that no tax at all was due to the People of Puerto Rico on the interests in the San Gerónimo tract derived by appellant from the United States of America in the manner above stated.

Apparently it was generally assumed in the earlier years (though there was no court decision on the point) that due to the form in which the transaction between Baker and the Navy Department was cast, the tract in the hands of Baker and his successors would be free from local property taxes for ten centuries. At least, it is conceded that until October

26, 1949, the Treasurer had made no attempt to assess such property taxes on the San Gerónimo tract.

Appellant's argument that the decision of the Supreme Court of Puerto Rico was erroneous is an ingenious and elaborate one, but it seems to us to be over-conceptualistic in its approach. Appellant says: "The Court below should not be permitted to dress up as a local question a question which is in substance a Federal one." We agree, and we do not think that the court has done that. Upon the contrary, it seems truer to say that appellant has attempted to dress up as a federal question a question which in the last analysis is a local one.

■ The interpretation of § 5 of the Naval Service Appropriation Act of 1921, 42 Stat. 139, and of the deed which the Secretary of the Navy executed pursuant to the authority thereof, is no doubt a federal question. The Navy was authorized to "exchange or lease" the San Gerónimo tract in consideration of the conveyance by Baker to the United States of certain property suitable as a site for a radio station. But in whichever form the transaction was to be cast, Congress decreed that "in time of war or national emergency, if necessary, the Navy Department shall have without cost free and unlimited use of any land so exchanged or leased." The Secretary of the Navy chose to execute to Baker a lease for 999 years, with a technical reversion in fee to the United States at the end of that time, and of course, with the reservation throughout the period of the lease of the right of free user in time of war or national emergency. In Baker v. United States, supra, 27 F.2d at 869, we said: "It appears that the form of the transfer, namely, a long lease, was undoubtedly adopted by the Navy Department in order that there should be no question of retaking the entire property from the defendant Baker, without cost, 'in case of war or national emergency.'" As we pointed out in United States v. San Gerónimo Development Co., Inc., supra, 154 F.2d at page 85, this reason for the form of the transaction exhibited an unnecessary caution by the Navy Department:

"Thus the Secretary of the Navy could have conveyed the fee to Baker but still, by force of the Act of 1921, Baker would have held the fee subject to the aforesaid reserved right of free user. If the reserved right in that case would properly have been called an easement in gross, nevertheless as a right created under authority of an Act of Congress it would necessarily have had to be recognized and enforced by the courts. In other words, under § 5 of the Naval Service Appropriation Act of July 12, 1921, the reserved right was not made dependent upon the continued possession of the fee by the United States."

Cf. Baltimore Shipbuilding & Dry Dock Co. v. Mayor and City Council of Baltimore, 1904, 195 U.S. 375, 382, 25 S.Ct. 50, 49 L.Ed. 242.

■ We had no difficulty in concluding that when in 1929 the President conveyed to the People of Puerto Rico the technical reversion in fee after the expiration of the 999-year lease, this conveyance did not purport to, and could not as a matter of law, result in a release to the Baker interests of this reserved right of user which the Congress had decreed should be retained by the United States.

In the instant case, the Tax Court and the Supreme Court of Puerto Rico accepted fully what we said in our earlier opinions as to the nature of the property interest conveyed to Baker by the lease for 999 years. However, Chief Justice Snyder correctly observed:

"The two Court of Appeals cases involved problems wholly different from the question presented here. The language the Court uses in those two cases is not addressed to the problem before us and is not conclusive in the instant case. We fail to find any possible basis for invoking the doctrine either of res judicata or of collateral estoppel in this case by

virtue of anything the Court of Appeals held or said in the Baker and San Gerónimo cases."

Perhaps the Congress, in authorizing an "exchange or lease" in 1921, *could* have prescribed that the interest conveyed to Baker should be forever immune from local taxation by the People of Puerto Rico. Whether the Congress did so is a federal question, but it is a federal question to which the answer is easy. So far as we are aware, the doctrine of implied delegated immunity, which has been curtailed sharply in recent years, has not required, in circumstances having any serious resemblance to the facts of this case, that this kind of leasehold interest from the United States be free from local taxation to the holder of such leasehold interest, absent an express grant of immunity by the United States. See United States v. County of Allegheny, 1944, 322 U.S. 174, 176–177, 186–188, 64 S.Ct. 908, 88 L.Ed. 1209.

The Congress did not in the Act of 1921 expressly provide that the interest to be transferred to Baker should be free from local property taxes. If it had thought about the problem at all, which may be open to doubt, we do not believe that the Congress would have deemed it wise, or fair to the People of Puerto Rico, so to prescribe. It may be that the Navy Department thought it might be desirable to have Commander Baker occupy the premises; appellant argues that this desire would be subject to be frustrated if Commander Baker were vulnerable to expulsion from the premises as a result of a local tax sale. But Baker's normal life expectancy would have consumed only a very small part of the 999 years. Also, Commander Baker did not covenant to occupy the premises, which were conveyed to him "for such use and improvement" as he and his assignees might deem proper. Baker lost no time in proceeding to exploit the property as a real estate development. We see no reason why the Congress would have wished to prescribe

that the subdivided tracts, in unpredictable private hands by assignment from Baker, should be for ten centuries free of the burden of local taxation. Such tax immunity would not be necessary to protect the reserved right to free user in time of national emergency, which the Congress by an exercise of paramount legislative power prescribed to be retained by the United States at all events. The opinion by Chief Justice Snyder makes this clear. One of appellant's arguments was that, under §§ 315 and 347 of the Political Code, the purchaser of real property sold for nonpayment of taxes obtains an absolute title thereto "free from all mortgages, liens or other encumbrances"; that therefore it could not be supposed that the Baker tract was subject to the property tax, because under that supposition the application of this provision of § 347 of the Political Code would violate the ruling which this court made in United States v. San Gerónimo Development Co., Inc., supra, 154 F.2d 78, that the reserved right of free user still remains in the United States. In answer, Chief Justice Snyder pointed out that this argument overlooks the "overriding factor" that we are dealing here with a right reserved in the Baker lease pursuant to the explicit command of the Congress, which had plenary legislative power in the premises. He wrote:

"Under the peculiar circumstances of this case a limitation exists on the otherwise unfettered terms of § 347 inasmuch as the reserved right of free user in the United States may not be impaired, either by application to the tract of the terms of § 347 or by any other means. It follows that the dilemma envisaged by the petitioners does not exist. A purchaser at a tax sale in this particular case would take title to the petitioners' parcels subject to the reserved right of free user by the United States, of which the said purchaser would have notice by virtue of the recordation thereof in the Registry of Property."

Cf. City of New Brunswick v. United States, 1928, 276 U.S. 547, 556, 48 S.Ct. 371, 72 L.Ed. 693.

██ We refer briefly to other federal questions which appellant says are presented. It asserts that the imposition of the taxes here was in violation of two provisions of § 2 of the Organic Act, 39 Stat. 951, 952, 48 U.S.C.A. § 737: (1) "That no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws"; and (2) "That the rule of taxation in Porto Rico shall be uniform."

As to due process, there is no lack of due process if appellant's property is taken by a valid exercise of the taxing power—which gets us back to the point at issue here. As to the equal protection of the laws, it cannot be said that the local law, as construed by the Supreme Court of Puerto Rico, constitutes "a purposeful discrimination against one person and in favor of another person in like case, with no rational basis for a differentiation between the two." Everlasting Development Corp. v. Sol Luis Descartes, 1 Cir., 1951, 192 F.2d 1, 7, certiorari denied 1952, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709.

██ Nor is there any violation of the requirement of the Organic Act that the rule of taxation in Puerto Rico shall be uniform. See San Juan Trading Co., Inc., v. Sancho, 1 Cir., 1940, 114 F.2d 969, 972. There is no indication that other persons, like appellant, holding under a lease for 999 years, or for a comparable prolonged period, would be treated any differently. Appellant asserts that during the tax years now in question the property tax was not imposed upon usufructuaries of lots under cessions in perpetuity granted by certain municipal governments in Puerto Rico. So far as we are aware, the Supreme Court of Puerto Rico has not so held. But as Chief Justice Snyder's opinion points out, the legislature of Puerto Rico, wishing to encourage the construction of housing, authorized the municipalities to grant lots in perpetuity for the construction of houses thereon, and in aid of such policy may have relieved such usufructuaries of the obligation to pay the property tax; that if as a matter of law such exemption was provided by statute, "we can see no basis for a complaint by the petitioners against such Legislative classification."

We reach then the only serious question in the case, whether the insular government as a matter of local law has imposed the tax which the Treasurer has undertaken to assess here.

██ The broad scheme of real estate taxes is contained in various sections of the Political Code of Puerto Rico. In general, the tax is laid upon the property as such, irrespective of how the various interests, which in the aggregate represent absolute ownership, may be split up; and the "lien for taxes attaches to the land itself, irrespective of whatever subdivision of beneficial or security interests may exist therein." People of Puerto Rico v. Federal Land Bank of Baltimore, 1 Cir., 1940, 108 F.2d 275, 276. Under § 298 of the Political Code, the property tax is assessed to the "owner" thereof, "and the person appearing of record on the fifteenth day of January shall be held to be the true owner thereof." This conception of ownership does not preclude the existence of some outstanding property interests in persons other than the "owner"—for example, where the land is subject to a mortgage, or to a conventional lease for years, or to an easement.

If the Navy had adopted the second alternative permitted to it by the Act of 1921 and had transferred the fee to Baker by an absolute conveyance, subject only to the reserved right of free user by the United States in time of national emergency, however this reserved right might be described in real property terminology, then admittedly Baker would have become the "owner" of the tract, within the meaning of § 298 of the Political Code, and the tax assessed against appellant here, as assignee of

Baker's rights, would have been rightly assessed under the terms of the local law.

The question then is whether the alternative form in which the transaction was cast—that of a "lease" for 999 years, with the same reserved easement of free user by the United States, makes all the difference in the world, so that no longer would it be permissible to assess a tax against appellant as "owner" of the San Gerónimo tract. The issue of local law is as narrow as that! In its opinion the Supreme Court of Puerto Rico pointed out that it was not dealing with "an ordinary lease for a conventional period," but was confining itself to the peculiar lease for 999 years then before it. The court concluded that appellant as sublessee or assignee for approximately a thousand years of portions of the Baker tract is the "owner" of real property within the meaning of § 298 of the Political Code and is therefore required as such to pay the property tax thereon. This conclusion is reminiscent of what the Supreme Court of the United States has many times told us, in rejecting literal interpretations of taxing acts based upon "attenuated subtleties," that taxation "is a practical matter" in which the courts should not be too much concerned with the "refinements of title." See Harrison v. Schaffner, 1941, 312 U.S. 579, 581, 582, 61 S.Ct. 759, 761, 85 L.Ed. 1055. See also Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. After an attentive consideration of the exhaustive opinion of the Supreme Court of Puerto Rico, in which that court undertook a reconciliation of various provisions of the Political Code, the Civil Code, and the Mortgage Law of Puerto Rico, we cannot say that that court's ultimate conclusion was "inescapably wrong" or "patently erroneous." Sancho v. Texas Co., 1940, 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401; De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

 Appellant urges that this is not the sort of case in which we are bound to apply the "inescapably wrong" criterion, since the local law question involves the interpretation of a local statute probably copied from a model in one of the states, which this court is quite as capable of construing correctly as is the Supreme Court of Puerto Rico. Of course if the question at issue turns on an esoteric point of law derived from Spanish sources, we might be especially reticent about concluding that the decision of the Supreme Court of Puerto Rico was "inescapably wrong." However, the rationale of the "inescapably wrong" criterion is not limited to that situation, but applies broadly to all questions of merely local concern. In Sancho v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 510, 307 U.S. 613, 59 S.Ct. 626, 629, 83 L.Ed. 946, the Supreme Court of the United States said:

"Taxing acts of Porto Rico are purely local and the traditional reluctance of this Court to overturn constructions of such local statutes by local courts is particularly applicable to interpretations of Porto Rican statutes by Porto Rican tribunals. Orderly development of the government of Porto Rico as an integral part of our governmental system is well served by a careful and consistent adherence to the legislative and judicial policy of deferring to the local procedure and tribunals of the Island."

See the even more emphatic statement in Sancho v. Texas Co., supra, 308 U.S. at pages 470–471, 60 S.Ct. at pages 353–354. More recently we recognized this principle in Iglesias Costas v. Secretary of Finance of Puerto Rico, 1 Cir., 1955, 220 F.2d 651, which involved an interpretation of the income tax law of Puerto Rico, a statute copied almost literally from the federal income tax law.

 Appellant says that the court below, in reaching the conclusion it did, ignored the proper deference which it should have given to a "constant administrative practice" not to tax property to a lessee, no matter how long the lease. So far as appears, this administrative practice seems to have consisted of nonaction merely; we have been cited to no administrative interpretation or ruling

as to the scope of § 298 of the Political Code. At any rate, the Supreme Court of Puerto Rico is entitled to considerable latitude in formulating the judge-made doctrines of the local law with reference to the canons of statutory interpretation, including the extent to which administrative practice may be resorted to as an aid or make-weight in the construction of statutes. Cf. Monagas v. Vidal, 1 Cir., 1948, 170 F.2d 99, 106, certiorari denied, Monagas y De La Rosa v. Vidal-Garrastazu, 1949, 335 U.S. 911, 69 S.Ct. 483, 93 L.Ed. 444, in which we recognized a similar latitude in the insular courts in the development of doctrines of res judicata as part of the local law.

And of course appellant stands in no better position, with respect to its tax liabilities for the four tax years now in question, by reason of the fact that the failure of the Treasurer to "wake up" sooner—so to speak—now precludes a corresponding assessment for earlier years, in view of the surcease afforded by the local statute of limitations.

The judgment of the Supreme Court of Puerto Rico is affirmed.